IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN D. FOGARTY,

      Plaintiff,

vs.                                                      No. CIV 05-26 WJ/LFG

GILBERT GALLEGOS, JOHN GONZALES,
DONALD KEITH, and MICHAEL FISHER in
their individual capacities, and the CITY of
ALBUQUERQUE,

      Defendants.

**PROTECTIVE ORDER AND**
**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR DETERMINATION OF THE**
**SUFFICIENCY OF DEFENDANTS KEITH AND FISHER'S RESPONSES**
**TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**
**AND MOTION TO COMPEL**

      THIS MATTER comes before the Court on Plaintiff John D. Fogarty ("Fogarty")'s Motion for Determination of the Sufficiency of Defendants Keith and Fisher's Responses to Plaintiff's Request for Production of Documents and Motion to Compel [Doc. 32], filed herein on June 14, 2005. Defendants Donald Keith ("Keith") and Michael Fisher ("Fisher") filed their response on July 5, 2005; Plaintiff Fogarty filed his reply on July 22, 2005. The motion is now fully briefed. For the reasons given below, the motion is granted in part and denied in part.

**Factual and Procedural Background**

      This is a civil rights action in which Fogarty alleges that on March 20, 2003, while he was participating in a peaceful political demonstration in front of the UNM Bookstore, and without

provocation on his part, the Defendant police officers fired teargas at him, shot him with a "pepperball," threw him to the ground, handcuffed him and otherwise utilized excessive force to restrain him. He alleges further that the officers' actions caused him physical and emotional injuries and lost income, and violated his rights under the Fourth and Fourteenth Amendments. Fogarty also asserts claims of supervisory and municipal liability against the City of Albuquerque and Defendant Gallegos, and asserts pendent claims under the New Mexico Tort Claims Act.

Defendants Keith and Fisher deny that they violated Fogarty's constitutional rights and deny that they committed any torts. They allege that the crowd of protesters they encountered on March 20, 2003 was large, angry, provocative toward the police, and had no recognizable leadership. They assert that their actions during the demonstration were objectively reasonable given the totality of circumstances facing them and, furthermore, were in accord with acceptable police procedures and practices.

Plaintiff served a set of Requests for Production on Defendants Keith and Fisher, to which Defendants responded in part and objected in part. Plaintiff asserts that Defendants' answers were incomplete and otherwise deficient, and states further that when counsel attempted to confer in good faith with opposing counsel, Defendants responded with a willingness to produce information and a proposed form of protective order. The parties are in disagreement as to the exact form of protective order appropriate in this case, although they do agree that some sort of protective order is appropriate. However, because no protective order has been entered, Defendants have not produced information which may be confidential, violate Defendants' privacy rights, or be privileged.

Plaintiff, being dissatisfied with Defendants' responses to the Requests for Production, filed this motion to compel, asking the Court to set a hearing to determine the sufficiency of Defendants'

responses and to compel Defendants to produce all documents requested. The Court finds that oral argument is not necessary, and it therefore declines to schedule a hearing but will decide the motion based on the parties' submissions.

## Discussion

The federal rules provide for broad and liberal discovery. Fed. R. Civ. P. 26 allows each party to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. To be discoverable, the information need not be admissible at trial so long as it appears reasonably calculated to lead to discovery of admissible evidence.

While this language is broad, the scope of allowable discovery is not without limits. In considering motions to compel, the Court may properly balance the needs and interests of the parties and may limit discovery where the benefit is minimal and the burdens of production are great. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir. 2000); Fed. R. Civ. P. 26(b)(2).

With these principles in mind, the Courts turns to an examination of the disputed Requests for Production, as well as the appropriate form of protective order in this case.[1]

### Request for Production No. 2

In Request No. 2, Plaintiff asks each Defendant to produce "any and all documents in your possession regarding your employment during the past ten [10] years, including but not limited to all documents which have been purged from any APD files." Defendants objected to this Request, arguing that personnel files are protected by a constitutional right to privacy, and that police officers

---

[1] Because the Requests for Production directed to Defendant Keith are identical to those directed to Defendant Fisher, and the responses to the Requests were the same for both officers, the Court follows the lead of the parties in their briefing and will not differentiate between the two individual Defendants.

in particular have a recognized expectation of privacy as to personal matters. Nevertheless, Defendants agreed to production of the officers' personnel files, subject to an *in camera* review by the undersigned Chief Magistrate Judge, "to ensure that neither privileged matters nor information which is entitled to a reasonable expectation of privacy is disclosed." [Doc. 32, Ex. 1, at 3]. However, Defendants also reserved the right to exclude from disclosure any material in the personnel files which is protected by the attorney-client, attorney work product, physician-patient, and psychotherapist-patient privileges.

The Tenth Circuit recognizes that individual police officers have a right to maintain the confidentiality of personal data contained in their personnel files. Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432 (10th Cir. 1981). "[p]ublic officials . . . are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." Id., at 435, *quoting from* Nixon v. Admin'r of Gen. Services, 433 U.S. 425, 457, 97 S. Ct. 2777, 2797 (1977).

However, where the documents do not contain personal data but are "related simply to the officers' work as police officers," the information is not protected from disclosure in a civil lawsuit by considerations of privacy. Lichtenstein, at 435. As the Tenth Circuit held elsewhere, there is "no absolute right to privacy in the contents of personnel files. Only highly personal information is protected." Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir. 1989). *See also*, Mason v. Stock, 869 F. Supp. 828, 833 (D. Kan. 1994) (the privacy interests of police officers should be limited in view of their positions as public servants). And "[even] a legitimate expectation of privacy . . . may be overridden by a compelling state interest." Lichtenstein, at 436. In the context of discovery in a Section 1983 action, the court noted:

> The compelling state interest involved here is the ascertainment of the truth . . . . [I]t is of special import that suits brought under this statute [*i.e.*, Section 1983] be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

Id.

It is clear that personnel records contain a plethora of information that may not be relevant to the parties' claims and defenses, and production of that information would not lead to the discovery of relevant, admissible evidence. For example, the personnel files likely include Social Security numbers, dates of birth, medical information and other critical, personal information which if improperly disclosed and distributed could cause difficulties. Similarly, disclosure and public dissemination of an officer's home address and home telephone number could result in safety and security issues for an officer or his or her family.

Personnel records also include health information, school transcripts, leave slips, elections in connection with various job benefits, and much other information that simply isn't relevant to any claim or defense in this case. *See* Fed. R. Civ. P. 26.

The Tenth Circuit in Lichtenstein sets up a three-part balancing test for determining discoverability of information sought from police files, under which the Court is to consider: "(1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." Under Lichtenstein, the Court is unable to weigh the appropriate considerations without an examination of the files.

The Court notes that Defendants, in their response to the motion, concede that portions of the personnel files at issue do not contain privileged or private information and are clearly

5

discoverable. They state that they have already agreed to submit those portions directly to Plaintiff, subject only to a protective order. Plaintiff's refusal to execute the protective order has delayed the disclosure. The Court therefore sets forth, at the end of this Memorandum Opinion and Order, the terms of a protective order which will be applicable to the information disclosed pursuant to this Order. Defendant shall produce directly to Plaintiff all non-privileged information, and information over which there is no objection. The production should occur within ten days of the date this Order is filed.

Defendants shall produce the remainder of the two personnel files to the Court for an *in camera* review. To the extent Defendants claim that any portions of the personnel files are either (1) personal data, unrelated to their work as police officers; or (2) protected by privileges including attorney-client, attorney work product, physician-patient, or psychotherapist-patient, Defendants shall submit a Vaughn index[2] to the Court and serve the index on Plaintiff's counsel.

The Vaughn index shall include a listing of the portions of the Bates stamped documents which Defendants seek to protect, a description of the nature of these portions, their author, date of creation, and the names of any persons to whom the portions were distributed. Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any. The Court will make rulings on any asserted privileges once it has reviewed the documents, along with the Vaughn index and any briefing Defendants wish to make.[3] Following its review, the

---

[2]*See*, Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

[3]Defendant's proffered second version of the protective order includes a procedure whereby Plaintiff is given 14 days after service of the Vaughn index and accompanying brief within which to file his response to Defendants' claims of privilege. Plaintiff objects to inclusion of this procedure on grounds it will cause unnecessary delay. The procedure appears to have been inserted in the potective oder for the benefit of Plaintiff; however, the Court will exclude it from the Protective

6

Court will issue a supplementary order detailing whether any of the information submitted should be produced to Plaintiff.

**Request for Production Nos. 3 and 8**

In Request No. 3, Plaintiff asks each officer to produce copies of "all complaints, whether filed with the APD independent review office, internal affairs, in a civil action, in any personnel action, or by any City of Albuquerque employee, against you during your employment with the City of Albuquerque Police Department [APD]."

In Request No. 8, Plaintiff asks for further information from police internal affairs files, including "an un-redacted copy of each and every document relating to any investigation and findings made against you by any entity or individual for any type of misconduct, and copies of all documents relating to any disciplinary action that was taken or implemented against you within the immediately preceding ten [10] years." Both of these requests specify that they include "any documents which have been purged from APD files."

Defendants' qualified objections to Request Nos. 3 and 8 are made on the same grounds specified as to Request No. 2. However, without waiving the objections, Defendants offer to make available a number of documents in response to Request No. 8, including numerous "supplemental incident reports," dispatch tapes and video tape.

The Court will order Defendants to produce the documents which it offered to produce responsive to Request Nos. 3 and 8, and as to the documents withheld, Defendant should proceed in the manner outlined in Request No. 2.

---

Order, as Plaintiff has not agreed to it and in fact objects to it. If any party is dissatisfied with the Court's determinations following the *in camera* review, that party may follow whatever remedies they deem appropriate under the Rules of Procedure.

As is true with personnel files, police investigative files such as those sought in Request Nos. 3 and 8 may contain personal data, such as an officer's home address or perhaps a psychological evaluation, which could give rise to a right of confidentiality. But, as noted above, this right to confidentiality is not absolute and may be overridden by a compelling state interest such as "ascertainment of the truth" in civil litigation. Lichtenstein, at 436.

Given the "broad federal mandate for discovery in all civil actions," Wood v. Breier, 54 F.R.D. 7, 10 (E.D. Wis. 1972), "[t]he police must make a 'substantial threshold showing' . . . that there are specific harms likely to accrue from disclosure of specific materials . . . . [T]he burden of persuasion rests on the party seeking to prevent disclosure." King, at 189, 191. In addition, "Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all." Wood, at 10. Thus, the Court will carefully scrutinize the claims that documents be withheld. Defendants' arguments for nondisclosure "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain hidden." Id., at 13.

Defendants argue that disclosure of internal affairs files dealing with any complaints, acts of misconduct, or disciplinary proceedings against them in unrelated cases is not warranted after the Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865 (1989) established the "objective reasonableness" standard for judging excessive force claims. Under this standard, the officers' subjective state of mind is not at issue and therefore, Defendants argue, any prior bad acts or a pattern of misbehavior on the part of an individual officer is immaterial to the case.

Plaintiff counters that he seeks the files not for the purpose of delving into the officers' state

of mind but rather to provide factual support for his claim of municipal liability against the City of Albuquerque and supervisory liability against Chief Police Gilbert Gallegos. Plaintiff alleges in his complaint that Defendant Gallegos and other supervisors were deliberately indifferent to his constitutional rights by failing to provide adequate training and supervision of APD officers, and that this deliberate indifference amounted to a custom, practice or policy of Defendant City of Albuquerque that constituted a moving force behind the officers' use of excessive force.

Defendants concede that the disclosure of internal affairs files is proper when the case includes claims of municipal liability and/or when punitive damages are sought. [*See*, Doc. 35, at 12]. Plaintiff does assert claims for municipal and supervisory liability in this case, and he asks for punitive damages against the individual defendants.

However, Defendants seek to limit the time frame for disclosure of these documents, arguing that evidence of complaints made or disciplinary proceedings brought against the officers which post-date the incident in question, and are unrelated to it, are not relevant to the claim of municipal liability. The contend that, since such a claim requires that Plaintiff show a widespread custom or practice on the part of the municipal defendant, carried out with the requisite degree of culpability, and demonstrate "a direct causal link between the municipal action and deprivation of federal rights," Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998), any bad acts by these officers after the incident in question have no relevance to such a causal link. Furthermore, they argue, while municipal liability can be predicated on the municipality's deliberate indifference in the face of actual or constructive knowledge of past acts of misconduct by the officer, Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 117 S. Ct. 1382 (1997), any acts of misconduct which post-date the incident in question are not relevant to this claim.

While Plaintiff is entitled to fair discovery, the time frame for which information is sought is not reasonable. For example, the requested 15 year period for pre-incident discovery is far too long. In related civil rights litigation in the employment area under Title VII of the Civil Rights Act of 1964, courts have imposed various lengths of time prior to the alleged discriminatory acts where discovery was reasonable. In LaFave v. Symbios, Inc., 2000 WL 1644154 (D. Colo. 2000), the court determined that discovery for the period five years before the alleged act was reasonable. In James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979), four years prior to the liability period was deemed appropriate. In EEOC v. Kansas City S. Ry., 195 F.R.D. 678, 679-80 (D. Kan. 2000), a three year period prior to the alleged act was approved. So, too, in Lyoch v. Anheuser-Busch Cos., 164 F.R.D. 62, 70 (E.D. Mo. 1995), five years prior to the alleged civil rights violation was deemed reasonable.

Here, the Court will impose a time limit of five years prior to the alleged act as a reasonable time frame. Thus, information for the prior 15 years need not be provided.

Internal affairs-type material created after the incident in question has questionable relevance to the claims of municipal and supervisory liability in this case. The final determination of relevance can best be made by the Court after it has had an opportunity to conduct an *in camera* review. Again drawing an analogy between this case and civil rights cases arising under the Civil Rights Act of 1964, courts have indeed authorized a reasonable post-incident period of discovery. In EEOC v. Kansas City S. Ry., it was one year after the liability period. In Raddatz v. Standard Register Co., 177 F.R.D. 446 (D. Minn. 1997), it was two years after the incident. So, too, in Hicks v. Arthur, 159 F.R.D. 468, 471 (E.D. Pa. 1995), the court allowed discovery to extend to the period two years after the incident giving rise to the lawsuit.

The Court directs that Defendants produce to the Court for an *in camera* inspection all information sought in Request Nos. 3 and 8 (other than that disclosed directly to Plaintiff as noted above), for a period of five years prior to March 20, 2003 and a period of two years after that date. The material shall be accompanied with a Vaughn index, as described above in the discussion of Request No. 2, and the index shall be served on Plaintiff. The Court will make rulings on any asserted privileges once it has reviewed the documents and the Vaughn index.

**Request for Production No. 5**

In this Request, Plaintiff asks for a copy of all communications (defined as including emails, letters, tapes, CDs, and reports) which Defendants "either received from or provided to any entity or individual which concern or mention Plaintiff," excluding any communications already produced in response to other Requests for Production. Plaintiff also asks for a privilege log for any communications for which Defendants assert a privilege.

Defendants responded that they did not produce any communication which specifically refers to Plaintiff John D. Fogarty, although they did produce police reports which reference unnamed/unidentified protesters. Plaintiff argues that these answers are not responsive to the question asked and that Defendants have unilaterally narrowed the discovery requests. He asks that Defendants be required to produce all communications and documents "pertaining to or concerning Plaintiff regardless of whether they name him specifically." [Doc. 32, at 7].

This is a reasonable request, and Defendants have raised no objection to it. Responses to Requests for Production must state, with respect to each item or category, either that inspection will be allowed or else an objection must be given with grounds stated therefor. Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 541 (10th Cir. 1984). The Court therefore orders that Defendants fully

comply with Request for Production No. 5 by disclosing all communications which the Defendant Officers either produced or received pertaining to Plaintiff Fogarty, whether or not he is explicitly named in the communication. Of course, if no such communications exist, they cannot be produced.

### Request for Production No. 6

In this Request, Plaintiff asks for copies of all "confidential, internal or 'intelligence' documents compiled regarding you, by you or on your behalf during your employment with APD," including any documents which have been purged from APD files. Defendants objected on grounds of vagueness, but stated also that they do not possess any "confidential, internal or 'intelligence' documents" aside from personnel or internal affairs files. In his Reply [Doc. 40], Plaintiff explains that by this Request he is seeking "all documents pertaining to Defendants that have been deemed confidential internal or 'intelligence' documents, including but not limited to documents from the Police Oversight Commission, Internal Affairs, and Internal Review Office, personnel files and all documents which have been purged from any file pertaining to Defendants." [Doc. 40, at 4].

Given Defendants' assertion that they do not possess any documents such as those described in Request No. 6, aside from personnel or internal affairs files, the Court finds that the material requested in Request No. 6 is covered in the Court's rulings on other Requests dealing with these types of files. The Court hereby notifies the parties that in those rulings it considers the terms "personnel" and "internal affairs" files to include the material as described by Plaintiff; that is, to include documents from the Police Oversight Commission, Internal Affairs, and Internal Review Office, as well as the officers' personnel files.

### Request for Production No. 7

In this Request, Plaintiff seeks copies of all audio tapes, belt tapes, photographs or video tapes

12

regarding any aspect of the March 20, 2003 demonstration. Defendants did not object to this Request and stated they would make various specified documents and other items available to Plaintiff. Plaintiff states that Defendants have not done so; Defendants claim that they produced the documents in question on the day prior to the date this Motion was served. In his Reply, Plaintiff asserts this is untrue and asks the Court to order production.

The Court does not resolve the factual dispute but, as Defendants have not objected to this Request, orders that all materials responsive to the Request be produced, even if they were previously provided.

**Request for Production No. 8**

See discussion above under the heading "Request for Production Nos. 3 and 8."

**Request for Production No. 9**

Plaintiff asks in this Request for "an un-redacted copy of all reports you drafted or generated that pertain to the demonstration referred to in Plaintiff's Complaint." Defendants did not object but stated they would make available for inspection and copying "upon request and payment by Mr. Fogarty's counsel" Supplemental Incident Reports prepared by Defendants Keith and Fisher.

Within ten days, the parties are to agree on a date when Plaintiff can inspect and copy these documents at Defendant's office.

**Request for Production No. 10**

In this Request, Plaintiff seeks "any and all certificates, materials, work books, text books, and other documents you have ever received _or_ provided in the course of or as a result of education or training of City of Albuquerque Police Department employees regarding excessive force, false arrest, false imprisonment, assault, battery, use of tear gas and use of pepper spray."

13

Defendants agreed to produce the officers' basic academy and advance training class records. However, although it is unclear from Defendants' responses, it appears that Defendant takes the position that additional material responsive to the Request, including the officers' "basic training records," will not be produced as they are "maintained by the Albuquerque Police Department." Plaintiffs argue that Defendants must make available all material that is under their control, whether or not it is actually in their possession. This is a fundamental discovery principle. Fed. R. Civ. P. 34(a). Materials sought under Rule 34 need not be in the responding party's actual possession so long as they are in the party's control; control is presumed if the documents can be obtained from a third party upon request. Resolution Trust Corp. v. Deloitte Touche, 143 F.R.D. 108, 110 (D. Colo. 1992); Golden Trade v. Lee Apparel Co., 143 F.R.D. 514 (S.D.N.Y. 1992); In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (documents are discoverable under Rule 34 if the responding party has actual possession, custody or control, or has the right to obtain the documents on demand; legal ownership is not determinative).

The Court concludes that Defendants should produce the officers' basic academy and advance training records, but the Court will not require production of certificate materials, work books, text books, or other materials. The burdens of locating and providing such an extensive amount of material far outweigh any benefit. The Court directs the Defendant Officers to supply copies of each officer's basic training records, to the extent such records deal with the topics of excessive force, false arrest, false imprisonment, assault, battery, use of tear gas and use of pepper spray.

**Request for Production No. 11**

In this Request, Plaintiff asks that the officers produce copies of documents evidencing sworn testimony given by them in the last 15 years, whether in depositions, at trial, in affidavits, or in

14

answers to interrogatories. Defendants did not object to this Request but responded by stating they do not possess copies of any sworn testimony they have given. In their Response [Doc. 35, at 17], Defendants assert that neither of them has been involved in any civil proceeding in which they testified or gave a deposition in a civil case, and therefore transcripts of any such proceedings do not exist. In addition, they state they have no knowledge regarding the existence of criminal case transcripts and assert that they have therefore properly responded to the Request.

The Court will not order Defendants to produce that which does not exist.

## Order

IT IS THEREFORE ORDERED that Plaintiff's Motion for Determination of the Sufficiency of Defendants Keith and Fisher's Responses to Plaintiff's Request for Production of Documents and Motion to Compel [Doc. 32], is granted in part and denied in part, as detailed above.

IT IS FURTHER ORDERED that the disclosures ordered herein shall be made subject to a **Protective Order** to ensure confidentiality of sensitive information, the terms of which are as follows:

> 1.   Defendants Donald Keith and Michael Fisher (hereinafter referred to as "Defendant Officers") shall produce to Plaintiff's counsel a copy of those portions of their personnel files and internal affairs files which Defendant Officers do not contend are privileged from disclosure, within ten (10) days of the date of this Order.
>
> 2. Defendant Officers shall produce to Chief United States Magistrate Judge Lorenzo F. Garcia a copy of those portions of their personnel files and internal affairs files which Defendant Officers contend are privileged from disclosure, along with a Vaughn index as described below. The Court will then conduct an *in camera* inspection to ensure that neither privileged matters nor information which is entitled to a reasonable expectation of privacy is disclosed. Defendant Officers shall produce these portions of their personnel files and internal affairs files within ten (10) days of the date of this Order.
>
> 3. Along with the files, Defendant Officers shall submit to the Court and serve on Plaintiff's counsel a Vaughn index, which shall include a listing of the portions of the documents which Defendants seek to protect, a description of the nature of these

15

portions, their author, date of creation, and the names of any persons to whom the portions were distributed. Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any.

4. Plaintiff and Plaintiff's counsel shall hold these personnel and internal affairs files in the strictest of confidence, store the files securely, and use the files solely for the purposes of this litigation.

5. Plaintiff and Plaintiff's counsel shall not disclose or produce these personnel and internal affairs files to any non-party at any time except for police procedures experts retained by Plaintiff in this matter and for use as exhibits at trial.

6. Plaintiff and Plaintiff's counsel shall accept responsibility for limiting access to these personnel and internal affairs files to those qualified persons (attorneys, associates, staff/employees who are working on the litigation, and Plaintiff's police procedures experts) who are authorized to receive the files under a Protective Order.

7. Plaintiff and Plaintiff's counsel agree to return to Defendant Officers their personnel and internal affairs files produced under this Protective Order within thirty (30) days of the resolution of this case.

8. Plaintiff and Plaintiff's counsel agree to purge all copies of Defendant Officers' personnel and internal affairs files from Plaintiff's and Plaintiff's attorney's files at the resolution of this lawsuit.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge