## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

JOHN D. FOGARTY

        Plaintiff,

vs.                                    No. CIV 05-26 WJ/LFG

GILBERT GALLEGOS, JOHN GONZALES,
DONALD KEITH, and MICHAEL FISHER in
their individual capacities, and the CITY of
ALBUQUERQUE,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART<br>MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant John Gonzales' Motion for

Summary Judgment, filed May 30, 2006 **(Doc. 162)**.  Having considered the parties' briefs and

the applicable law, I find that Defendant's motion is not well-taken on all claims except Plaintiff's

state tort claim of assault and battery, on which summary judgment will be granted.

### Background

In this civil rights case, Plaintiff alleges that his constitutional and state law rights were

violated by Defendants in connection with his peaceful participation in a political demonstration

which took place in front of the University of New Mexico ("UNM") Bookstore on the evening

of March 20, 2003.

### I.      Plaintiff's Allegations

The Second Amended Complaint asserts both civil rights violations and state tort claims

against the individual Defendants directly, against certain Defendants on the basis of supervisory

liability, and against the City of Albuquerque ("City").  Plaintiff requests compensatory and

punitive damages, and attorney fees, based on the following claims:

Count I:    Unlawful Arrest in Violation of the Fourth & Fourteenth Amendments against
            Defendants Keith, Hill, Hubbard and N. Gonzales;[1]

Count II:   Excessive Use of Force in Violation of the Fourth & Fourteenth Amendments
            against Defendants Keith, Hill, Hubbard, J. Gonzales, Fisher and N. Gonzales;

Count III:  Claims of Supervisory and Municipal Liability under 42 U.S.C. § 1983 against
            Defendants City of Albuquerque and Gallegos;

Count IV:   Claims of Supervisory Liability under 42 U.S.C. § 1983 against Defendants Keith,
            Hill, Hubbard and J. Gonzales;

Count V:    State Tort Claims (assault, battery and false arrest) against Defendants Keith, Hill,
            Hubbard, J. Gonzales, Fisher and City of Albuquerque;

Count VI:   Negligence, Gross Negligence and Recklessness of Law Enforcement Officers
            Causing Enumerated Torts against Defendants Keith, Hill, Hubbard and J.
            Gonzales.[2]

    This motion addresses only Plaintiff's claims against John Gonzales ("Defendant

Gonzales"), a captain with the Albuquerque Police Department ("APD").  Defendant Gonzales

seeks summary judgment based on qualified immunity as to the constitutional claims brought

pursuant to Counts I, II and IV, and on the remaining state tort claims brought against him in

Counts V and VI.

**II.    Parties' Positions**

    Plaintiff John Fogarty ("Plaintiff") is a physician and faculty member in the UNM Family

---

[1] There are two Defendants with the same last name. John Gonzales is a captain with the
Albuquerque police force.  Nick Gonzales is a law enforcement officer employed by the
Albuquerque Police Department.

[2] The Second Amended Complaint contains an additional "Count V," which the Court
will construe as "Count VI."

Medicine Department and the Public Health Department.   He decided to attend a political demonstration at the UNM campus on March 20, 2003 in order to voice his opposition to the war in Iraq.  Defendant Gonzales was the APD commander at the protest and the immediate supervisor for all police officers assigned to duty at the demonstration. The rally began at the UNM Bookstore around 5:00 p.m.

A.      Plaintiff's Summary of Events and Argument

Plaintiff's attendance at the rally was for the purpose of a peaceful, non-violent, political demonstration.  Plaintiff walked around the event and occasionally during the protest, he joined a group of drummers and played his African drum.  Sometime around 7:00 p.m., APD officers released teargas into the crowd.  Plaintiff maintains that there were no warnings prior to APD's deployment of teargas and pepperball shots and that their uses were unwarranted because the demonstration was non-violent.  Plaintiff alleges that APD officers literally picked him up while he was sitting on the steps of the UNM Bookstore, yanked his arms behind his back, tore and broke the drum he had attached to his belt, knocked him to the ground, hyperflexed his wrist, placed him in handcuffs, and shoved a knee in his back.   They then dragged him by his arms across the street through the lingering teargas to the police van.  Plaintiff's contact with teargas allegedly resulted in an acute asthma attack, physical injuries, physical pain and suffering, stigmatization, lost income and emotional distress.  Plaintiff was taken into custody, but no charges were brought.

Based on Plaintiff's representations, monumental efforts have been made to identify the two police officers who arrested Plaintiff, all to no avail.  The Court's perplexity over this situation is worth noting considering that Plaintiff's arrest was captured on videotape, yet after 27 volumes of discovery and after 30 depositions none of the Defendants and/or witnesses can

identify the two arresting officers.

Moreover, discovery has been extended several times in this case, see, Docs. 106 & 120, and Plaintiff has amended the complaint twice to add new Defendants in an effort to unmask the arresting officers -- literally.   The identities of the officers were obscured during the riot.  Officers at the scene wore full riot gear including face masks, and those not in riot gear used black tape to obscure their badge numbers.  See Resp. at 3 n.2.

B.      Defendant's Summary of Events and Argument

Defendant Gonzales describes a political rally which grew volatile when protestors spilled out onto Central Avenue and began an unauthorized march through heavily-trafficked streets. Some of the protestors sat down in the street, threw projectiles at police and generally failed to obey lawful and repeated police commands.  Defendant Gonzales ordered the limited deployment of teargas, as well as the removal of the drums, with arrest of drummers authorized as needed, in order to allow the crowd to hear the public address commands.  However, he denies he authorized the use of projectiles at the protest.  According to Defendant Gonzales, deployment of teargas was limited and carried out only after numerous unheeded warnings, and Plaintiff's arrest and the force used in effecting the arrest was reasonable under the circumstances.

III.    **Factual Background**

Parties agree that an authorized protest demonstration was held on the UNM campus on March 20, 2003.  Defendant Gonzales was physically present at the scene and moved from location to location as was required to generally observe the events and give supervisory direction to the police officers under his command.

At one point in the event, protestors spilled out onto Central Avenue and proceeded

4

westbound toward University Avenue.  At the intersection of University Avenue and Copper

Avenue, the crowd of protestors turned westbound and proceeded westbound on Copper Avenue

toward Cedar Avenue.  The protestors then continued to march southbound on Cedar Avenue,

which resulted in the protestors emerging close to I-40.  The protestors were not allowed to

continue westbound on Central Avenue and were directed back to the UNM Bookstore by

marching eastbound on Central Avenue.  While parties do not disagree about the number of law

enforcement officials present at the scene (about 75 in number), the parties disagree about the

number of protestors present: Plaintiff remembers about 500, and Defendant Gonzales about

1,000.  They disagree on whether the march on Central Avenue was authorized: Defendant

Gonzales states that Central had been closed off for the protection of the marchers and the public,

and Plaintiff states that he assumed the street was closed off to allow the protestors to march

along its route.

    Plaintiff was not part of the westward bound group of protestors.  He joined the group

when it returned to the UNM campus going east, left the group to retrieve his drum from his

parked car, and then joined up with a circle of ten to fifteen drummers on Central Avenue.  There

is a huge discrepancy between Plaintiff's and Defendant Gonzales' recollection of the crowd's

behavior.  Plaintiff remembers the event as a "very peaceful" demonstration, with people dancing,

singing and in a "light" mood.  Ex. 4 (Fogarty Dep.) at 28:13-17.  Defendant Gonzales states that

the protestors had an unusually surly and hostile demeanor that was unlike anything he had

experienced in his 20 years on the force.  Ex. B, ¶¶ 8, 17.

    Defendant Gonzales asserts that he gave repeated commands over his loud speaker in an

effort to maintain crowd control.  Plaintiff heard the police announce orders for the protestors to

clear the streets, and complied with the orders by returning to the area of the steps in front of the

UNM Bookstore.  Ex. 4 at 49 & 118.  However, Plaintiff also described the verbal commands

coming over the public address system as "garbled and unintelligible." Ex. 4 at 37.

Defendant Gonzales states that he did not order the drummers to stop drumming over the

public address system because he felt that these orders would not have been heard over the

drumming.  Ex. 3 at 35-36.  He  contends that, out of concern for public safety, he determined to

remove or "take" the drums so the crowd would be able to hear the commands coming over the

public address system, and arrest the drummers if necessary.  Ex. 3 at 12-13 and at 19:17-22.  It is

unclear, and therefore disputed, whether Defendant Gonzales ordered the arrest of the drummers,

as opposed to ordering the removal of the drums with arrest to be carried out only if necessary.

Steven Hill, a named Defendant in this case and SWAT team sargeant, remembered that the

officers were directed to "take whoever was beating the drums at that time."  Ex. 2 at 10:6-16.[3]

Hill interpreted the order to mean that officers were "basically to stop the drummers by taking

them into custody."  Ex. 2 at 32:25 - 33:1-10.  Michael Fisher, a law enforcement officer with the

APD heard Defendant Gonzales "give a command to the arrest team to go and grab that person

because he was agitating the crowd from the sidewalk."[4]  Ex. 10 at 16:19-24; see also Ex. 7

(Mohr Dep.) at 14-15 (noting Defendant Gonzales' admission to ordering drummers to be

arrested and drums seized).

_____

[3]  Other law enforcement teams were also present at the protest, including an Emergency
Response Team, mounted patrol, air traffic patrol, a canine team and regular uniformed officers.
Ex. B (Gonz. Aff.).

[4]  The individual, who was "standing on UNM property. . . in front of the bookstore" at
the time is assumed to be Plaintiff.  See Ex. 10 at 17:8-9.

Plaintiff also takes issue with Defendant Gonzales' statements that the drummers were interfering with the ability of the police to communicate with the crowd, and that the drumming was inciting the crowd and creating increased hostility towards the police.   There is evidence that, prior to Plaintiff's arrest, removal of seven to eight of the drums had "totally changed the mood of the crowd, who could now hear the [public address] commands."   Ex. 7 (Mohr Dep.) at 15:3-8.

Parties dispute whether any warnings were issued concerning the deployment of teargas. Defendant Gonzales states that he gave "many, many" warnings.  Ex. C (Gonzales Dep.) at 38:1-7; Ex. 1 ("Incident Recall" sheet documenting "warnings given to crowd before chemical dispersement"); Ex. 7 (Mohr Dep.) at 23-24 (some witnesses heard warnings; warnings given while sirens still on).  However, there is also evidence that no warnings were given.  See, Ex. 7 at 17:4-17. Plaintiff disputes Defendant Gonzales' contention that "hard core" protestors remained on the scene and that the situation was at an impasse, contending instead that there were insufficient safety concerns to warrant the deployment of teargas.

Plaintiff challenges Defendant Gonzales' representation of the number of officers designated to deploy the teargas, the amount of gas deployed, and when the gas was released. Defendant Gonzales maintains that the initial volley of gas was deployed in front of the crowd, not into or over the crowd, so that the gas would blow back over the officers, and that Defendant Gonzales himself was not wearing a gas mask or protective gear in order to use himself as a "barometer" to measure the amount of gas being deployed and its effect on people.  Plaintiff insists that gas and smoke was deployed several times in an amount sufficient to cause him to have a severe asthma attack.  While Defendant Gonzales states that the drums were removed

7

prior to the deployment of gas so that the protestors could hear the commands of the officers, Plaintiff states that gas was deployed twice *before* the drums were removed.  Ex. 4 (Fogarty Dep.) at 52:3-7.

There are disputes regarding the use of projectiles in connection with dealing with the protestors.  Sometime after the first volley of teargas, Plaintiff recalls being hit with some form of projectile in his leg shortly after he observed a police officer aiming what appeared to be a rifle at demonstrators on campus, including himself.  Yet, Defendant Gonzales contends that he did not authorize the use of any such projectiles (such as a pepperball gun or bean bag rifle), nor does he have any knowledge as to who may have discharged a projectile at Plaintiff.  Defendant Gonzales implies that an explanation for the missile could be the projectiles that were hurled by the protestors at police.

Plaintiff was arrested on the steps of the UNM Bookstore, from which arises the claims in this lawsuit.

### Discussion

Defendant Gonzales moves for dismissal on all of Plaintiff's claims, asserting the defense of qualified immunity for the federal claims.   Plaintiff concedes that he is not asserting a separate substantive claim under the Fourteenth Amendment, Resp. at 14-15, thus the Court addresses Plaintiff's federal claims under the Fourth Amendment only.

I.    **Legal Standard**

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). In the summary judgment setting, when a defendant raises a

qualified immunity defense, a heavy two-part burden must be overcome by the plaintiff.  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  A plaintiff must first establish that the facts alleged, taken in the light most favorable to the nonmoving party, show that the officer's conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201  (2001);  Medina, 252 F.3d at 1128.  Second, a plaintiff must demonstrate that the right was clearly established.  Id.

If the plaintiff meets his burden of coming forward with facts or allegations which would demonstrate that the defendant's alleged violation should have been apparent in light of preexisting law, then the defendant assumes the normal summary judgment burden of establishing that no material facts remain in dispute that would defeat its claim of qualified immunity.  See, Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).  Specifically, the public official must show that no material issues of fact remain as to whether his or her actions were "objectively reasonable" in light of the law and the information he possessed at the time. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether summary judgment is appropriate, the Court considers the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party.  Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193, 1214 (10th  Cir.2002).

## II.    Fourth Amendment  - Unlawful Arrest (Count I)

The core of Defendant Gonzales' argument for dismissal of Plaintiff's unlawful arrest claim is that Defendant Gonzales did not personally arrest Plaintiff.   Dismissal is also sought based on the reasonableness of Defendant Gonzales' assessment of the situation that day and actions taken with respect to that assessment.  There is no question under the undisputed facts that Plaintiff was arrested.  See, U.S. v. Edwards, 242F.3d 928, 934 (10th Cir. 2001); California

9

v. Hodari D, 499 U.S. 621, 625-26 (1991) (a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave).

A.    Whether Plaintiff has Alleged Violation of Constitutional Right

Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.  Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988); Foote v. Spiegel et al., 118 F.3d 1416, 1423 (10th Cir. 1997).  Defendant Gonzales contends that he had no personal involvement in Plaintiff's arrest is lacking on the part of Defendant Gonzales.  However, this personal involvement includes specific actions which result in the deprivation of a plaintiff's constitutional rights.  See, Langley v. Adams County, Colo., 987 F.2d 1473, 1479 (10th Cir. 1993) (citing Mitchell v. Forsyth, 472 U.S. 511 (1985)).  Liability under § 1983 extends to individuals who "subject, or cause to be subjected" any person to a deprivation of rights secured by the Constitution.

Plaintiff's assertions that Defendant Gonzales was directly involved in the arrest is valid.  The arresting officers did not act independently, but on Defendant Gonzales' orders.  Plaintiff's assertions are not based on a respondeat superior theory, but are lodged against Defendant Gonzales directly, and constitute a sufficient showing of some personal responsibility of Defendant Gonzales.  See, Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988) (showing of some personal responsibility of the defendant is required).

The Court cannot resist bringing up the "identity issue" again, as it fits in so neatly with Defendant Gonzales' challenge to the personal nexus argument.  As mentioned above, Plaintiff has hit a brick wall trying to determine the identity of the two arresting officers shown in the

videotape of his arrest.  The Court has preliminarily reviewed the other pending summary

judgment motions concerning the other individual Defendant officers, and notes that an alleged

lack of involvement in Plaintiff's arrest is raised in every one of those motions.  This is a

convenient position for Defendants to take:  Defendant Gonzales had no involvement with

Plaintiff's arrest, even though he gave the order to arrest the drummers.[5]  At the same time, none

of the other officers had anything to do with the arrest, and no one seems to know who did.

What is remarkable about this position is that, according to Defendant Gonzales' own testimony,

officers are required to complete a report if they detain or arrest someone, or use any force on an

individual. Ex. 3 (Gonzales Dep.) at 18:21-25, see also Ex. 7 (Mohr Dep.) at 48; Ex. 8 (Campbell

Dep.) at 48:20-50:1- 4.[6]  Plaintiff asserts that no one filled out an arrest report or use of force

form.

　　　　What the identity issue does not accomplish in this case is an escape from a personal nexus

for Defendant Gonzales.  The Court accordingly finds that Plaintiff has alleged a violation of a

constitutional right sufficiently to move on to the next part of the qualified immunity inquiry.

B.　　Whether Law was Clearly Established

　　　　 Defendant Gonzales concedes that Plaintiff need not present an identical case to show the

law was clearly established, but nevertheless argues that Plaintiff has failed to demonstrate a

substantial correspondence between Defendant Gonzales' alleged conduct and prior law

establishing that those actions were clearly prohibited.  Resp. at 20 (citing Hannula v. City of

---

　　　　[5]  Even if Defendant Gonzales' orders were to arrest the drummers only if necessary -- as
Defendant Gonzales contends – the order dispatching officers to do so came only from him.

　　　　[6]  Use of force forms are completed by the officer's supervisor.  Ex. 8 at 48:20 - 49:1-5.

Lakewood, 907 F.2d 129, 131 (10th Cir. 1990)).   Defendant Gonzales also contends that he is still entitled to qualified immunity if he mistakenly but reasonably concluded that probable cause existed for Plaintiff's arrest.   See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (law enforcement officials who mistakenly conclude that probable cause exists are still entitled to qualified immunity if their conclusion is reasonable)

Officials are generally held to have constructive knowledge of established law.   Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 n.27 (10th Cir. 2003) (citing Cannon v. City & County of Denver, 998 F.2d 867, 874 n. 6 (10th Cir.1993)).   The law was clearly established by January of 2003 that a seizure must be reasonable.   United States v. Sharpe, 470 U.S. 675, 682 (1985).  The law requires parties to make only a reasonable application of existing law to their own circumstances.   Johnson v. Martin, 195 F.3d 1208, 1216-18 (10th Cir.1999).   Plaintiff has done so.  Pre-existing law requires that an arrest be supported by probable cause, and probable cause requires a showing that an offense is being or has been committed.   Pre-existing law also defines arrest as a curtailment of freedom by law enforcement officers such that a reasonable person would believe he was not free to leave.   Thus, the contours of the law regarding unlawful arrest under the Fourth Amendment was sufficiently clear at the time such that Defendant Gonzales would have understood his conduct, as alleged by Plaintiff, was unlawful.

It is undisputed that Plaintiff was fact arrested.   Defendant Gonzales gave the direct order which effected that arrest.   Defendant Gonzales was on-site, observing the event over a period of time, making assessments for his decisions, and directing the actions of the APD officers which have become the focus of Plaintiff's allegations in this case.   I find that Defendant Gonzales is not entitled to qualified immunity on the basis that pre-existing law allowed him to mistakenly but

reasonably conclude that probable cause for the arrest was present.

C.      Whether Summary Judgment is Appropriate

At this juncture, Defendant Gonzales must show that no material issues of fact remain as to whether his actions were "objectively reasonable" in light of the law and the information he possessed at the time.  In order to obtain summary judgment on Plaintiff's Fourth Amendment claim, Defendant Gonzales must show that actions he took resulting in Plaintiff's arrest were objectively reasonable, which includes a showing that Plaintiff's arrest was based on probable cause.  See, United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir.1993) (formal arrests or seizures that resemble formal arrests must be supported by probable cause to be reasonable).

In order to support his position that his actions were objectively reasonable, Defendant Gonzales refers to his considerations for public safety and maintaining crowd control in what he describes as chaotic circumstances.  He maintains that removal of the drums was critical in restoring order.  Sargeant Hill understood Defendant Gonzales' order as being directed toward the person with the big African drum.  Ex. 2 at 9:7-9.  However, there are factual discrepancies in the events leading up to Plaintiff's arrest, including the degree of disruption caused by the drums and the allegedly hostile mood of the crowd.   Plaintiff was one of the last of the drummers to be arrested.  Ex. 2 at 9:9-11.  As mentioned above in the factual narrative, there is evidence to support Plaintiff's contention that at the time he was arrested, the drumming had quieted and the crowd had calmed down.  Defendant Gonzales' position is that the drums were taken so that people would then be able to hear the police commands over the public address system, and that teargas was deployed only after numerous warnings.  However, Plaintiff recalls that gas was deployed twice before the drums were taken.

13

Plaintiff's recitation of facts concerning his own conduct, which must be viewed in his favor at this point, does not support an objectively reasonable basis for his arrest. Plaintiff was attending a peace protest, walking around and occasionally playing his drum. He did not commit any crime or disobey any commands. In fact, Plaintiff returned to the steps of the UNM Bookstore after hearing police commands to clear the streets. Plaintiff was not told to stop playing his drum prior to being allegedly tackled from behind as he kneeled on his drum, nor was he ever told he was under arrest or informed of what law he was breaking.[7]

These material issues of fact leave open the question whether Plaintiff's arrest, based on Defendant Gonzales' direct order, was objectively reasonable. Thus, summary judgment is denied as to Plaintiff's Fourth Amendment claim of unlawful arrest.

## III.  Fourth Amendment - Excessive Force (Count II)

### A.  Whether Plaintiff Has Alleged Violation of Constitutional Right

Plaintiff asserts that in addition to expressly ordering the use of bean bag rifles, pepperball guns and teargas on the crowd, Defendant Gonzales violated his duty to intervene to prevent excessive force during his arrest. Defendant Gonzales again argues that there is no connection between Defendant Gonzales and the force used during Plaintiff's arrest, since Defendant Gonzales did not have any physical contact with Plaintiff. The Court finds little merit to this argument, based on the unresolved material facts in this case.

Plaintiff claims that the arresting officers tackled him without warning from behind, using force sufficient to rip metal clips in taking his drum from his belt. They allegedly twisted his wrist

---

[7]  Plaintiff did state, however, that one of the few officers who did not have a gas mask or shield on came up to him and informed him that he was being charged with inciting a riot in response to Plaintiff's inquiry. Ex. 4 at 77:5-11.

hard enough to tear his tendons and put him in handcuffs, and then dragged him into a cloud of

teargas which caused a severe asthmatic reaction, causing Plaintiff to fear for his life.  Plaintiff

contends that Defendant Gonzales' liability rests on his failure to intervene when the arresting

officers used excessive force during his arrest.

Plaintiff's allegations of excessive force are not confined to the two officers who arrested

him, but also to the general methods employed by APD that day and authorized by Defendant

Gonzales.  Defendant Gonzales' conduct in authorizing deployment of teargas and possibly other

non-lethal weapons sufficiently connects him to Plaintiff's alleged injuries sustained from his

exposure to teargas and from being shot with pepperball rounds and possibly other non-lethal

weapons or chemical agents.[8]  These specific allegations constitute Defendant Gonzales' personal

involvement under § 1983 for Plaintiff's excessive force claim.

B.      Whether Law was Clearly Established

The Court finds that the law governing Fourth Amendment excessive force claims was

clearly established at the time of the underlying March 2003 incident.  Defendant Gonzales

nevertheless contends that he is entitled to qualified immunity if he was reasonably mistaken about

the lawfulness of his actions.  Where the right is clearly established, a defendant "rarely" is able to

succeed with a qualified immunity defense.  Cannon v. City & County of Denver, 998 F.2d at 874.

A plaintiff's claim of excessive force against law enforcement officers in the context of a

seizure or arrest is analyzed under the "objective reasonableness" standard of the Fourth

Amendment.  Graham v. Connor, 490 U.S. 386, 388 (1989).  A court assesses the reasonableness

_____

[8]  As an example of other chemical agents that may have been used that day, an Incident
Recall list indicates that 7:01 p.m., "stink balls" were deployed in a "NE direction."  Deft's Ex. 1.

of an officer's conduct from the perspective of a reasonable officer on the scene, "acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002) (quoting Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001)).  Factors to consider in assessing whether the force used was reasonable include: the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest. Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005).  It was also clearly established that chemical agents, when used inappropriately, constitute an excessive use of force.  See, Despain v. Uphoff et al, 264 F.3d 965 (10th Cir. 2001) ("Cases addressing the use of chemical agents against a single individual are sufficiently analogous to a general discharge of pepper spray to constitute clearly established law").

Moreover, an officer who stands by and does not prevent a fellow officer's use of excessive force may be liable under § 1983.  Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1433 (10th Cir. 1984) (ruling that an officer who did not prevent fellow officer's use of excessive force may be liable under § 1983), vacated on other grds., City of Lawton, Oklahoma v. Lusby, 474 U.S. 805 (U.S.Okla. Oct 07, 1985).   The Tenth Circuit has held that the duty to intervene is clearly established.  Mick v. Brewer, 76 F.3d 1127 (1996) (officer who fails to prevent an excessive use of force can be held liable for his "nonfeasance").

The United States Supreme Court has cautioned against fusing the "objective reasonableness" standard that attaches to a substantive Fourth Amendment inquiry with that which is utilized in the second prong of the qualified immunity inquiry (i.e., whether the law was clearly established such that it would be clear to a reasonable officer that the conduct was

16

unlawful in the situation he confronted). <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  In the qualified immunity application of "reasonableness," the question is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted.  In such a case, the circumstances must be such that "the defendant was so 'prevented' from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." <u>Cannon</u>, 998 F.2d at 874 (citation and footnote omitted).

This is not that kind of a case. Defendant Gonzales contends that he had not previously experienced such a hostile crowd in his 20 years on the police force.  However, he offers no facts which suggest that handling this particular crowd presented complications or quirks which clouded his ability to know that inappropriate use of teargas or other non-lethal weapons, or that standing by while his officers used excessive force during an arrest, may violate Plaintiff's constitutional rights.  Defendant Gonzales was a seasoned veteran of the APD, and none of the facts imply that the orders he issued, including the deployment of chemical agents, required split-second decisions where there might arguably be more room for reasonable mistakes of judgment concerning applicable law.  Defendant Gonzales was at the event, moving from location to location at the demonstration, making observations and giving supervisory direction to the police officers under his command.   Defendant Gonzales testified that many warnings were issued to the crowd, and that the APD had been briefed and prepared for the demonstration.  I therefore conclude that Defendant Gonzales has not demonstrated that, as a matter of law, the state of the pre-existing law was such that he could have been reasonably mistaken about the lawfulness of his actions.

C.      Whether Summary Judgment is Appropriate

Defendant Gonzales can still prevail on summary judgment if he can show that there is no material question of fact and, as a matter of law, his conduct was objectively reasonable. Defendant Gonzales contends that the force he used was objectively reasonable considering the mood of the crowd and his concern for public safety.  However, in the context of an excessive force claim, good intentions do not count.  See, Williams v. Denver, 99 F.3d 1009, 1024 n.3 (10th Cir. 1996) (citing Whren v. United States,517 U.S. 806, (1996) (subjective intent of officer irrelevant in Fourth Amendment analysis).

From the factual narrative set out above, it is obvious that disputes of material fact abound regarding the crowd's demeanor and the urgency of the situation.  In Defendant Gonzales' description of the event, protestors were hurling projectiles at the officers, and the situation was at an impasse.  Plaintiff maintains that the demonstration was peaceful and that the mood of the protestors was light.  In fact, from Plaintiff's view of the event, some of the hostility was coming from the officers.  Plaintiff testified that during his arrest, after he told the officers that he was having an asthma attack, one of the officers told him, "You're not good enough to be an American."  Ex. 4 at 54:13.  Plaintiff also presents evidence from a witness who also described the scene as peaceful and the use of force unwarranted.  Ex. 6 (Ball Dep.) at 42-45.

There are also unresolved factual issues regarding: the number of protestors, which relates to the amount of force police would have deemed necessary in order to maintain control of the crowd; whether the march onto Central Avenue was authorized; the nature of the orders Defendant Gonzales gave to take the drums or arrest the drummers, and the purpose for the order (Plaintiff recalls that teargas was deployed before the drums were taken, while Defendant

18

Gonzales explained that the drums were taken in order as a way to restore order); whether warnings were given prior to deployment of chemical agents into the crowd; whether egress from the site was available to the crowd (Defendant Gonzales states egress was allowed to the north and east, while Plaintiff states that APD blocked off egress to the east).

Finally, Plaintiff has raised disputes of material fact concerning whether Defendant Gonzales was present when he was arrested, which would form the basis for his claim of failure to intervene when excessive force was being used.  Plaintiff testified that an officer who was not wearing a gas mask or shield approached him when the arresting officers were taking him into the street.  Ex. 4 at 77:23-77:1-25.   Whether or not Defendant Gonzales witnessed the excessive force allegedly used by the arresting officers, and whether he failed to intervene, are disputed facts which should be resolved by the fact finder.  Therefore, summary judgment is denied on Plaintiff's excessive force claim.

**IV.    Supervisory Liability Under § 1983**

Plaintiff alleges that Defendant Gonzales is liable because he "failed to adequately supervise or control [his] subordinate officers in such a way that would prevent the excessive use of force by these subordinates."  Second Amended Complaint, ¶ 54.   Defendant Gonzales is correct that he cannot be liable for the alleged unconstitutional acts of his subordinates by virtue of his supervisory role.

A.    Whether the Law was Clearly Established

The law regarding supervisory liability under § 1983 was clearly established at the time the underlying events took place.  There is no concept of strict supervisor liability under § 1983. Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation and citation omitted).   In order to

impose supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." Beedle v. Wilson, 422 F.3d 1059, 1073-74 (10th Cir. 2005) (citing Jenkins, 81 F.3d at 994)).  A supervisor is not liable under § 1983 for the actions of a subordinate unless an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise.  Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993).  A plaintiff may satisfy this standard by showing that the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.  Beedle, 422 F.3d at 1073-74.

B.      Whether Summary Judgment is Appropriate

        Defendant Gonzales adheres to the position that there are no facts which suggest that he acted less than reasonably in his supervisory role as incident commander.  He concedes that he ordered the drums removed and arrest of the drummers if necessary, authorized the deployment of teargas, and tempered another officer's desire to arrest more protestors.  Ex. E (Hill Dep.) at 29:19-23.

        Plaintiff has sufficiently alleged the existence of an affirmative link between Defendant Gonzales' actions at the demonstration and Plaintiff's alleged injuries to allow this claim to proceed against Defendant Gonzales.  He exercised supervision and control over his subordinates, made decisions and gave direct orders which, under Plaintiff's view of the facts, directly resulted in Plaintiff's injuries.

        The facts in this case have been sufficiently fleshed out by now with regard to Plaintiff's Fourth Amendment claims such that a reasonable fact finder could disagree with Defendant

Gonzales' assessment of his conduct as objectively reasonable regarding the deployment of

teargas, warnings given beforehand, and even the alleged acquiescence in the alleged excessive

force used during Plaintiff's arrest.  Therefore, summary judgment is denied on this claim.

**V.      State Tort Claims - Assault, Battery and False Arrest**

Plaintiff also brings state tort claims of assault, battery and false arrest under the New

Mexico Tort Claims Act.[9]  Defendant Gonzales reiterates the position he has taken on Plaintiff's

other claims, i.e., that he did not directly participate in Plaintiff's arrest and did not order a

pepperball to be fired at a drummer.

A.      Assault and Battery

An actor is subject to liability to another for assault or battery if (a) he acts intending to

cause a harmful or offensive contact with the person of the other or a third person, or an imminent

apprehension of such a contact, and (b) an offensive contact with the person of the other directly

or indirectly results.  An assault, which is the placing of another person in fear, may exist without

a battery, which is the unwanted touching or physical contact with another person.  State v.

Ortega, 113 N.M. 437, 440 (N.M. Ct. App. 1992).

Plaintiff argues that Defendant Gonzales' order concerning arrest of the drummers and

pepperball rounds (which is also disputed) were the direct and proximate cause of the alleged

assault and battery.   This "domino effect" argument is ill-suited to a tort which contains an intent

element.  See, United Food and Commercial Workers Unions, Employers Health and Welfare

---

[9]  Defendant Gonzales does not dispute that the procedural requirements for bringing suit under the New Mexico Tort Claims Act have been satisfied, and that sovereign immunity has been waived these specific torts.  See, NMSA 1978, § 41-4-12 (waiving immunity for law enforcement officers for various injuries).

21

<u>Fund v. Philip Morris, Inc</u>. 223 F.3d 1271, 1274 (11th Cir. 2000) (usual common law rule seems to be that the strictures of proximate cause are applied more loosely in intentional tort cases) (citing Prosser & Keeton on the Law of Torts § 8, at 37 n. 27 (5th ed.1984)).  It is undisputed that Defendant Gonzales had no actual physical contact with Plaintiff and did not effect the arrest. Accordingly, Defendant Gonzales cannot be liable to Plaintiff for assault or battery.  Defendant Gonzales is entitled to summary judgment on Plaintiff's state tort claims of assault and battery.

B.      <u>False Arrest</u>

        On the other hand, Defendant Gonzales'direct orders regarding arrest of the drummers precludes summary judgment on Plaintiff's false arrest claim.  Defendant Gonzales contends that the objective of his order was to remove the drums.   However, the evidence suggests that APD officers involved in carrying out this order understood this to mean arresting the drummers.  For example, Sargeant Hill understood Defendant Gonzales' order as being directed "toward the person with the big African drum."  Ex. 2 at 9:7-9.  The intent of Defendant Gonzales' order was allegedly to arrest Plaintiff.  For this reason, summary judgment is denied on Plaintiff's state tort claim of false arrest.

**VI.     State Tort Claims of Supervisory Negligence, Gross Negligence and Recklessness**

        Plaintiff asserts that Defendant Gonzales failed in his duty to exercise care ordinarily used by a reasonably prudent and qualified supervisory law enforcement officer in supervising officers in the field, and that this failure resulted in his injuries.

        A law enforcement officer has the duty in any activity actually undertaken "to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done."  <u>Cross v. City of Clovis</u>, 107 N.M. 251, 253 (N.M.,

22

1988).  The breach of such a duty must have "proximately caused the deprivation of a right secured under New Mexico law.  <u>California First Bank v. State</u>, 111 N.M. 64 (1990).

The factual underpinnings of Plaintiff's supervisory claims brought under § 1983 are applicable here as well, giving rise to unresolved issues regarding the reasonableness of Defendant Gonzales' actions.  For example, Plaintiff challenges the reasonableness of arresting the drummers without first telling them to stop.  Defendant Gonzales explains that he could not announce an order for the drummers to stop drumming because the crowd could not hear over the sound of the drums.  Yet, there is evidence that gas was deployed before the drums were removed, i.e., before the crowd could hear the teargas warnings which Defendant Gonzales contends were announced over the public address system.  These factual disputes require resolution by a fact finder, and summary judgment is denied on this claim.

## VII.   Punitive Damages

Plaintiff concedes that he is not entitled to punitive damages on his state tort claims in Counts V and VI, based on N.M.S.A. § 41-4-19(C).[10]

### Conclusion

For his Fourth Amendment claims of unlawful arrest and excessive force, Plaintiff has met his burden on qualified immunity, and has also presented issues of material fact which suggest that a reasonable fact finder could find that Plaintiff's arrest was unlawful, and that excessive force was used during his arrest.  Thus, the Court denies summary judgment on those claims.  Plaintiff has sufficiently alleged the existence of an affirmative link between Defendant Gonzales' actions

---

[10]   That section reads: "No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages. . . ."

at the demonstration and Plaintiff's alleged injuries to allow the claim of supervisory liability under §1983 to proceed to trial.

Because Defendant Gonzales had no actual physical contact with Plaintiff and did not actually carry out the arrest, Defendant Gonzales is not liable to Plaintiff for state tort claims of assault or battery, and Defendant Gonzales is entitled to summary judgment on these claims. Moreoever, Defendant Gonzales' orders regarding the arrest of the drummers precludes summary judgment on Plaintiff's false arrest claim.

There are disputed issues of material fact regarding whether Defendant Gonzales exercised reasonable care supervising his subordinates during the demonstration, and therefore summary judgment is denied on Plaintiff's state tort claims of negligence, gross negligence and recklessness. Plaintiff concedes that punitive damages are not available for the state tort claims brought in Counts V and VI.

**THEREFORE,**

**IT IS ORDERED** that Defendant John Gonzales' Motion for Summary Judgment (**Doc. 162**) is GRANTED IN PART and DENIED IN PART as follows:

" Summary judgment is DENIED on Plaintiff's Fourth Amendment claim of unlawful arrest for reasons described above (Count I);

" Summary judgment is DENIED on Plaintiff Fourth Amendment claim of excessive force for reasons described above (Count II);

" Summary judgment is DENIED on Plaintiff's claim of supervisory liability under § 1983 for reasons described above (Count IV);

" Summary judgment is GRANTED on Plaintiff's state tort claim of assault and battery, but DENIED on Plaintiff's state tort claim of false arrest for reasons described above (Count V);

"       Summary judgment is DENIED on Plaintiff's state tort claims of negligence, gross
        negligence and recklessness for reasons described above (Count VI).

"       Punitive damages are not available to Plaintiff on the state tort claims in Count V
        and Count VI, as conceded by Plaintiff, and as the law requires.

        _____
        UNITED STATES DISTRICT JUDGE