## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN D. FOGARTY

       Plaintiff,

       vs.                         No. CIV 05-26 WJ/LFG

GILBERT GALLEGOS, JOHN GONZALES,
DONALD KEITH, MICHAEL FISHER,
STEVEN HILL, NICK GONZALES and
DAVE HUBBARD in their individual capacities,
and the CITY of ALBUQUERQUE,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Partial Summary Judgment for Dismissal of Plaintiff's Fourth and Fourteenth Amendment Unlawful Arrest, Excessive Force, and Supervisory Liability claims, filed on May 31, 2006 (**Doc. 165**). Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and will be denied.

## BACKGROUND

In this civil rights case, Plaintiff alleges that his constitutional and state law rights were violated by Defendants in connection with his peaceful participation in a political demonstration which took place in front of the University of New Mexico ("UNM") Bookstore on the evening of March 20, 2003.

## I.     Plaintiff's Allegations

The Second Amended Complaint asserts both civil rights violations and state tort claims against the individual Defendants directly, against certain Defendants on the basis of supervisory liability, and against the City of Albuquerque ("City").  Plaintiff requests compensatory and punitive damages, and attorney fees, based on the following claims:

Count I:        Unlawful Arrest in Violation of the Fourth & Fourteenth Amendments against Defendants Donald Keith, Steven Hill, Dave Hubbard and Nick Gonzales;[1]

Count II:       Excessive Use of Force in Violation of the Fourth & Fourteenth Amendments against Defendants Donald Keith, Steven Hill, Dave Hubbard, John Gonzales, Michael Fisher and Nick Gonzales;

Count III:      Claims of Supervisory and Municipal Liability under 42 U.S.C. § 1983 against Defendants City of Albuquerque and Gilbert Gallegos;

Count IV:       Claims of Supervisory Liability under 42 U.S.C. § 1983 against Defendants Donald Keith, Steven Hill, Dave Hubbard and John Gonzales;

Count V:        State Tort Claims (assault, battery and false arrest) against Defendants Donald Keith, Steven Hill, Dave Hubbard, John Gonzales, Michael Fisher and City of Albuquerque;

Count VI:       Negligence, Gross Negligence and Recklessness of Law Enforcement Officers Causing Enumerated Torts against Defendants Donald Keith, Steven Hill, Dave Hubbard and John Gonzales.

This motion addresses only Plaintiff's federal claims against Defendants Steven Hill, Dave Hubbard and Nick Gonzales.   Defendant Hill ("Sgt. Hill") is a Special Weapons and Tactics ("SWAT") Sergeant employed by the Albuquerque Police Department ("APD.")  Defendant Nick Gonzales ("Officer Gonzales") is a law enforcement officer employed by the APD, and will be

---

[1]  Plaintiff alleges claims brought under the Fourth Amendment as made applicable to the states through the Fourteenth Amendment.  Plaintiff is not alleging separate substantive claims under the Fourteenth Amendment.

referred to as "Officer Gonzales" to differentiate between him and Defendant John Gonzales, who will be referred to as "Captain Gonzales" where he is mentioned in this discussion. Dave Hubbard ("Sgt. Hubbard") is a Sergeant employed by the APD.[2]

A.      Plaintiff's Summary of Events and Argument

Plaintiff John Fogarty is a physician and faculty member in the UNM Family Medicine Department and the Public Health Department. He decided to attend a political demonstration at the UNM campus on March 20, 2003 in order to voice his opposition to the war in Iraq. Plaintiff was among a group of people who gathered in front of the UNM Bookstore on the evening of March 20, 2003. The purpose of the gathering was a peaceful, non-violent, political demonstration. Plaintiff was peacefully demonstrating and acting in complete accord with the law. While standing in the steps in front of the UNM Bookstore, Plaintiff was hit by an APD officer with a pepper ball discharged from a high-powered rifle. Plaintiff was then arrested by several police officers. This occurred as a direct result of an order from Captain Gonzales for officers to arrest "the drummer." Sgt. Hill then carried out the order to arrest the drummer with the African drum. The officers arresting Plaintiff yanked his arms behind his back, tore and broke the drum he had attached to his belt, knocked him to the ground hyper-flexed his wrist, placed him in handcuffs, and shoved a knee in his back. The APD officers then dragged him by his arms across the street through the tear gas to the police van. While being handcuffed and taken across the street, Plaintiff suffered a severe asthma attack which rendered him unable to walk. The APD

---

[2] Separate summary judgment motions have been filed by Defendant Donald Keith, an Emergency Response Team Sergeant employed by APD, and Defendant Michael Fisher, a law enforcement officer employed by the APD. After those motions had already been filed, Plaintiff amended the complaint twice to include Defendants Hill, Hubbard, J. Gonzales and N. Gonzales.

officers who arrested him were dressed in riot gear, had no visible personal identification, and their faces were obscured, making their identification virtually impossible.  As a result of this attack, Plaintiff suffered numerous bruises and welts, and the tendon in his left wrist was torn, which interfered with his work and activities and still causes him discomfort.

B.      Defendants' Summary of Events and Argument

Defendants contend that the political rally grew volatile when protestors spilled out onto Central Avenue and began an unauthorized march through heavily-trafficked streets.  Some of the protestors sat down in the street, threw projectiles at police and generally failed to obey lawful and repeated police commands.  The demonstration took on a "mob" demeanor, and people became more agitated as a result of the drumming, which also interfered with people being able to hear police commands coming over the public address ("PA") system.  Captain Gonzales ordered the removal of the drums, and if necessary, the arrest of the drummers in order to allow the crowd to hear the police commands.  A limited deployment of teargas was ordered to control the crowd and encourage clearing of the streets.  Sgt. Hill was positioned fairly close to the UNM bookstore.  He supervised the arrest, but cannot identify the two officers who physically arrested Dr. Fogarty.  Neither Officer Gonzales nor Sgt. Hubbard participated in the arrest.

**FACTUAL BACKGROUND**

Parties agree that an authorized protest demonstration was held on the UNM campus on March 20, 2003.  They do not agree on much else.  During the event, protestors spilled out onto Central Avenue going west toward University Avenue, north on University, west on Copper, and

4

south on Cedar, resulting in the protestors emerging close to I-40.[3]  The protestors were directed

back to the UNM Bookstore by marching eastbound on Central Avenue.  Defendants contend

that although UNM policy allowed demonstrations on campus, the protestors were not authorized

to demonstrate in the streets.  Plaintiff, who arrived when the protestors were returning east on

Central, just before the police closed off Central, took the closing of the street as an invitation that

police had blocked off Central so marchers could march.  Ex. 1 at 22:17-21.  Also, Gilbert

Gallegos, APD Chief of Police at the time, stated that as a result of the briefing which took place

earlier in the day, it was understood that the demonstrators would be permitted to march in the

streets, and that the event was planned as a march rather than a stationary protest.  Ex. 3

(Gallegos Dep.) at 50:11-54:19.

        Plaintiff brought an African drum with him to the protest as a way to express his views.

He was one of several protestors who played on their drums during the protest.  Sometime after

arriving at the event, he returned to get his drum from the car.  Parties disagree about the mood of

the crowd and the potential for disorder.  Because pro-war groups had shown up at the protest,

the police were concerned that things could become volatile.   Ex. B at 101:13-19.  Deputy Chief

Ray Schultz[4] had conversations with area business owners who were concerned about ability to

operate their businesses because the rally was preventing customers from gaining entry into their

establishments, Ex. B (Schultz Dep.) at 42:1-16, as well as with several people during the course

_____

        [3]  The exact progress of the protestors was charted by Defendant John Gonzales, and
undisputed by the parties in the summary judgment pleadings filed by Defendant Gonzales.  See,
Doc. 163 at 5, ¶ 7.

        [4]Ray Shultz, who was Deputy Chief of APD at the time of the protest is now Chief of
APD.

of evening "who were upset that the event was allowed to occur and the streets were allowed to be blocked." Ex. B at 102:1-7. Defendants describe the event as disruptive, causing an obstruction to hospital traffic and requiring the police to reroute buses and notify the fire department to change their normal routines for public safety. Ex. B at 90.

Defendants contend that the mood changed from a "crowd to a mob" when the protestors arrived at University and Central and the drumming started. Ex. B at 48:3-19; 89:23-25. Both Deputy Chief Schultz and Sergeant Hill stated that the drums were inciting people. Ex. B at 48:3-19. Deputy Chief Schultz stated that at one point, a group of protestors were going to try to take over the gas pumps at University and Central, Ex. B at 39:13-22, and that the purpose of using chemical munitions "was to get the crowd to disperse [because it] was safer for everybody, instead of having hands-on and having individual confrontations between law enforcement officers and protestors." Ex. B at 90:13-21. Captain Gonzales felt that the crowd was unusually "surly" and mean, unlike anything he had seen in his career. Ex. A at 34-35.

Plaintiff contends that the mood of the crowd was peaceful, that almost all demonstrators followed the officers' instruction to clear the streets, and that only a "handful of demonstrators" remained in the streets after the police gave orders to clear the streets. Ex. 1 (Fogarty Dep.) at 49:19-24. These demonstrators appeared to be acting in civil disobedience, and remained sitting in street after the first volley of gas was thrown. Ex. 1 at 50:8-15.

There does not appear to be a dispute over whether any commands were issued over the public address ("PA") system for the drummers to stop drumming. Captain Gonzales testified that such warnings were not given because people would not be able to hear those warnings over the drumming. There is some disagreement over whether any warnings were given for the

deployment of chemical munitions, such as teargas.  Defendants state that stated that "many, many warnings" were issued over the PA prior to gas being deployed, telling people to leave the area, that the protest was over.  Ex. A (J. Gonz. Dep.) at 38:5-7; Ex. B (Schultz Dep.) at 74:7-13. Some evidence suggests that while warnings were announced for the deployment of teargas, these warnings were given early on, and not "close in time" to the dispersement of the gas.   Ex. 5 (Mohr) at 17:8-22.[5]  Other evidence suggests that police sirens continued while the warnings were announced.  Ex. 5 at 23:18-25.  Some people interviewed said they heard warnings for chemicals, Ex. 5 at 24:2-4, but other people did not hear the warnings.  Ex. 5 at 24:2-5.  Plaintiff described the police commands coming over the PA system as "unintelligible."   Ex. 1 at 37:21-25.

It is undisputed that Captain Gonzales authorized the deployment of teargas, but it is not clear what other types of non-lethal weapons were authorized for use by the officers during the event, such as sting ball grenades and "silver candles."[6]  Ex. 5 (Mohr Dep.) at 32:18-33:1-9; and 33:12-13 ("Everyone kind of threw what they had on their person").  Plaintiff recalls being hit by pepperball rifle.  Ex. 1 at 5:6-9.

The order which resulted in Plaintiff's arrest came initially from Captain Gonzales.   There is a dispute whether he ordered the removal of the drums or the arrest of the drummers.  Captain Gonzales contends that he directed removal of drums and authorized the arrest of the drummer if necessary.  Ex. A at 12:1-5.   Sgt. Hill understood those orders to mean: stop the drummers by taking them into custody.  Ex. 7 at 33:5-7.  Plaintiff maintains that he complied with police

---

[5]   Beth Mohr was an investigator for the City's Independent Review Office, charged with investigating internal complaints which were filed by Plaintiff and other protestors with the City's Police Oversight  Commission.  See, Doc. 164 at 4, par 7.

[6]   A "silver candle" is a silver canister that deploys smoke.  Ex. 5 at 32:10-11.

commands to move onto the UNM campus, Ex. 1 at 48:17-19, and this fact is conceded by

Defendants.  See, Statement of Material Facts ("SMF") 39; see also Ex. 5 (Mohr Dep.) at 30:13-

18.

Plaintiff was arrested on the steps of the UNM bookstore.  Issues concerning the

participant officers in the arrest, as well as the amount of force used in the arrest, are replete with

disputed facts, which will be addressed within the discussion of the individual Fourth Amendment

claims.

## DISCUSSION

Plaintiff contends that Officer Gonzales and Sgt. Hubbard arrested him without probable

cause in violation of his rights under the Fourth and Fourteenth Amendments.  He also alleges

that Sgt. Hill, Officer Gonzales and Sgt. Hubbard used excessive force during the course of his

arrest in violation of the Fourth and Fourteenth Amendments.  In addition, Plaintiff  alleges that

Sgt. Hill failed to adequately supervise or control his subordinate officers in such a way that

would prevent their use of excessive force in violation of the Fourth and Fourteenth

Amendments.[7]

## I.     Legal Standard

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly

violate the law.'"  Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting Malley v.

Briggs, 475 U.S. 335, 341 (1986)). In the summary judgment setting, when a defendant raises a

qualified immunity defense, a heavy two-part burden must be overcome by the plaintiff.  Medina

---

[7]  In the Second Amended Complaint, Plaintiff alleges that Defendants J. Gonzales, Keith, Hill and Hubbard had supervisory authority over other law enforcement officers at the March 20, 2003 demonstration.

v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  Plaintiff must first establish that the facts alleged, taken in the light most favorable to the nonmoving party, show that the officer's conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001); Medina, 252 F.3d at 1128. Second, Plaintiff must demonstrate that the right was clearly established.  Id.

If the plaintiff meets his burden of coming forward with facts or allegations which would demonstrate that the defendant's alleged violation should have been apparent in light of preexisting law, then the defendant assumes the normal summary judgment burden of establishing that no material facts remain in dispute that would defeat its claim of qualified immunity.  See, Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).  Specifically, the public official must show that no material issues of fact remain as to whether his or her actions were "objectively reasonable" in light of the law and the information he possessed at the time. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether summary judgment is appropriate, the Court considers the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party.  Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193, 1214 (10th Cir.2002).

## II.    Fourth Amendment  - Unlawful Arrest (Count I)

Defendants do not seek dismissal of Sgt. Hill for Plaintiff's Fourth Amendment unlawful arrest claim.  Sgt. Hill stated that he supervised Plaintiff's arrest after the arrest order was given. Ex. D at 9:14-23.  The core of Defendants' argument as to Officers Gonzales and Sgt. Hubbard is that they did not supervise or participate in the arrest.

### A.    Whether Plaintiff has Alleged Violation of Constitutional Right

It is undisputed that Plaintiff was arrested.  See, U.S. v. Edwards, 242F.3d 928, 934 (10th

Cir. 2001); <u>California v. Hodari D</u>, 499 U.S. 621, 625-26 (1991) (a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave).

Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.  <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1527-28 (10th Cir. 1988); <u>Foote v. Spiegel et al.</u>, 118 F.3d 1416, 1423 (10th Cir. 1997).  Defendants contend that this personal involvement in Plaintiff's arrest is lacking on the part of Officer Gonzales and Sgt. Hubbard.

Plaintiff included Officer Gonzales and Sgt. Hubbard as named Defendants in the First Amended Complaint, and in the Second Amended Complaint Plaintiff alleges that both Defendants, along with other APD officers "lifted and carried Plaintiff directly into a cloud of teargas, acting at the direction of Defendant Hill and Defendant J. Gonzales."  Second Amended Complaint,  27.  These allegations constitute sufficient personal involvement on the part of Defendants Hill and Gonzales to state a claim for unlawful arrest in violation of the Fourth Amendment.

B.    <u>Whether Law was Clearly Established</u>

Officials are generally held to have constructive knowledge of established law.  <u>Roska ex rel. Roska v. Peterson</u>, 328 F.3d 1230, 1251 n.27 (10th Cir. 2003) (citing <u>Cannon v. City & County of Denver</u>, 998 F.2d 867, 874 n. 6 (10th Cir.1993)). The law is clearly established "when it is well developed enough to inform the reasonable  official that his conduct violates that law." A "precise factual correlation between the then- existing law and the case at-hand is not required." <u>Patrick v. Miller</u>, 953 F.2d 1240, 1249 (10th Cir.1992) (quotation omitted).  A requirement of a case directly on point would quickly transform the qualified immunity standard

into an absolute immunity standard in the vast majority of cases. Yvonne L. v. N.M. Dep't of Human Servs., 959 F.2d 883, 892 (10th Cir.1992).  At the time of Defendants' actions, the law was clearly established that a seizure must be reasonable.  United States v. Sharpe, 470 U.S. 675, 682 (1985).  See, Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir.), cert. denied, 502 U.S. 1013 (1991) (plaintiff need not show that the specific action at issue has previously been held unlawful, but need only show that the alleged unlawfulness was apparent in light of preexisting law).  Law which existed at the time of the underlying events required that a formal arrest or seizure that resembles a formal arrest must be supported by probable cause to be reasonable.  United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir.1993).  Pre-existing law also defined arrest as a curtailment of freedom by law enforcement officers such that a reasonable person would believe he was not free to leave.  U.S. v. Edwards, 242 F.3d 928, 934 (10th Cir. 2001).  Thus, the contours of the law regarding unlawful arrest under the Fourth Amendment was sufficiently clear at the time such that Defendants would have understood their conduct, as alleged by Plaintiff, was unlawful.

C.    Whether Summary Judgment is Appropriate

        A defendant is entitled to summary judgment if no material issues of fact remain as to whether his actions were "objectively reasonable" in light of the law and the information he possessed at the time.  Officer Gonzales and Sgt. Hubbard take the position that they had nothing to do with Plaintiff's arrest.  Summary judgment for these Defendants is appropriate if Plaintiff fails to raise issues of fact on which a reasonable fact finder could find that either or both of them were involved in Plaintiff's arrest.  Further, Defendants would be entitled to summary judgment if Plaintiff fails to raise issues of fact supporting his position that probable cause did not exist for the arrest.

1.      *Probable Cause for the Arrest*

Defendants argue that even if Sgt. Hubbard and Officer Gonzales were mistaken about the existence of probable cause for Plaintiff's arrest, they are entitled to qualified immunity if they were reasonable in their mistaken belief.  See, Anderson v. Creighton, 483 U.S. 635, 641 (1987))(law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity).  They also argue that in determining whether probable cause existed for Plaintiff's arrest, the Court must rely on the "fellow officer rule" which takes into account the collective information of the police officers involved in the arrest, rather than relying exclusively on the extent of the knowledge of the particular officer who may actually make the arrest.  See,  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) (officer may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for arrest); United States v. Espinosa, 771 F.2d 1382, 1407 (10th Cir.1985) (police may "pool their information" to establish probable cause).

In this case, however, both Defendants were not left to rely solely on other officers' perceptions and conclusions regarding the existence of probable cause.  Cmp., e.g., Baptiste v. J.C. Penney Co., 147 F.3d 1252 (10th Cir. 1998) (defendant female officer arrived at scene after plaintiff had been detained by another officer, at whose request defendant conducted a pat-down search).  In this case, Defendants were present at the scene, and in the vicinity of Plaintiff's arrest.

Defendants argue that there was probable cause to believe that Plaintiff committed the crime of disorderly conduct, relying on the state statute prohibiting the same.  See, NMSA 1978, § 30-20-1(A) (Repl.Pamp. 1994).  However, the existence of a state statute does not answer the question of whether Plaintiff's behavior matched the conduct proscribed under the conduct

sufficiently such that an officer would have been reasonable in finding that there was probable cause to arrest Plaintiff.

According to Plaintiff, he was complying with police commands to move onto the UNM campus, and did not resist arrest or attempt to flee. He does not remember whether he was playing his drum when they arrested him. Ex. 1 at 55:6-7. Plaintiff was never charged with any offense. Under Plaintiff's facts, he never took aggressive action, was not armed and did not pose an immediate threat to the officers or the general public. He was not asked to stop drumming, although an officer is generally required to verbalize requests or commands to a person where that person is not threatening before using force. See, Ex. 6 (Campell Dep.) at 19:21-25) (preferable to tell that person what you want them to do first, and see how person responds to the request). There is also evidence that prior to the time he was arrested, the crowd had quieted down. This raises an inference that Plaintiff's arrest was unnecessary and not based on probable cause, if the objective of the arrest was to calm the crowd so that the officers' public address commands could be heard. Ex. D (Hill Dep.) at 28:7-14 ("Everytime we'd arrest somebody, the crowd would calm down. They would back off. They would start following our commands. . ."). Therefore, Plaintiff has sufficiently shown that there are disputes of fact concerning whether his arrest was based on probable cause.

2.    *Defendants' Roles in the Arrest*

Defendants also seek summary judgment on Plaintiff's Fourth Amendment claim by arguing that neither one had any part in the arrest. Officer Gonzales remembers being in front of the bookstore at one point, but states that he did not physically arrest Plaintiff, nor was he part of the arrest team. Ex. E at 5:1-6. He testified that he does not know who the arresting officers

were, even though he was standing only a couple of feet away from Plaintiff when he was arrested. Ex. E at 5:2-23.  He also stated that the only drummer he saw arrested was a person drumming on a five-gallon pail.  Yet, he stated that he was part of a group of officer who went to get the drummers.  Ex. E at 5:20-25.

Sgt. Hubbard was not sure exactly where he was in the relationship to exact area where Plaintiff was arrested.  Ex. E at 7:14-16.  Sgt. Hubbard stated that he has no recollection of Plaintiff's arrest, and did not see him get dragged across the street.  Ex. E at 7:20-22; 12:1-9.

Sgt. Hill remembered seeing Plaintiff being pulled out of the crowd, and recalled that the arresting officers as a group stepped into the crowd, grabbed Plaintiff and pulled him out into the street toward the command post.  Ex. D at 11:2-18.  Sgt. Hill identified Officer Gonzales as one of the officers "going in to get the drummers." Ex. E at 5:20-22.  Sgt. Hill also recalled Sgt. Hubbard and Officer Gonzales as being part of the group of line officers called upon to carry out the arrest.  Ex. D at 7:23 - 8:1-9.   However, Sgt. Hill could not state whether either of the Defendants actually had his hands on Plaintiff because they were wearing riot gear and gas masks. Ex. D at 14:8-19.[8]

Defendants characterize Sgt. Hill's testimony as a "snippet" of testimony insufficient to create a dispute of material fact.  The Court disagrees.  Part of the reason why Plaintiff is having to rely on circumstantial evidence in an effort to identify the arresting officers is due to a puzzling inability on the part of Defendants to disclose the identity of these individuals, despite extraordinary discovery efforts on the part of Plaintiff.  See, Court's Mem. Op. & Order, Doc.

---

[8]  After the March 20, 2003 peace protest, APD changed its policy regarding the identity d of officers at protests.  Present policy requires that the officers are clearly identifiable.  Ex. 4 (Schultz Dep.) at p. 45:19- 47:4.

193 at 3-4, and 10-11.  Pat Guerrera, a sergeant in charge of ERT officers the night of March 20, 2003, was shown the videotape of Plaintiff's arrested, and specifically requested by counsel for Defendant officers to identify the arresting officers.  He was unable to do so.  Ex. 9 (Guerrera) at 5:1-14.

Sgt. Hill testified that officers are required to complete and submit arrest reports when someone is arrested or detained. Officers who have any kind of physical contact are to have their supervisors fill out use of force forms.  In addition, officers are required to fill out supplemental reports describing what the officer did during the arrest.  This is separate from the actual arrest report which is done at the command post.  Ex. D (Hill Dep.) at 15:15-16:1-11.   Captain Gonzales testified that at a briefing at the end of the March 20th demonstration, at which Deputy Chief Schultz and Chief Gallegos were present, he told the officers:

> "Everybody needs to write a report.  Everybody needs to -- if you've had your hands on somebody, go to booking, identify the person you arrested, and make sure you write a supplemental report. . . Everybody who had hand-on should have written a report."

Ex. 2 at 18:12-19, 24-25.  No such report regarding Plaintiff's arrest has ever been disclosed to Plaintiff or his counsel.

I conclude that there is circumstantial evidence which precludes summary judgment for Defendants on Plaintiff's unlawful arrest claim, including the question of credibility of Defendant officers.  Bisbee v. Bey, 39 F.3d 1096, 1101 (10th Cir. 1994) (questions of credibility should be decided by the jury).

## III.   Fourth Amendment - Excessive Force (Count II)

Plaintiff's claims of excessive force are alleged against Defendants Hill, Hubbard and Nick Gonzales.  Defendants move for summary judgment as to all three Defendants.

A.      Whether Plaintiff Has Alleged Violation of Constitutional Right

Plaintiff alleges that Sgt. Hill, Officer Gonzales and Sgt. Hubbard were among those officers who used physical force in seizing Plaintiff on March 20, 2003, including but not limited to shooting Plaintiff with "pepperball" rounds, forcibly lifting and carrying him, exposing him to teargas which triggered a severe asthma attack, throwing him to the ground, hyperflexing his wrists, and dragging him by the arms.   Plaintiff also alleges that Sgt. Hill stood by as another APD officer shoved a knee into Plaintiff's back.  Second Amended Complaint, ¶ 36.

These assertions adequately state a claim under § 1983 for a claim of excessive force under the Fourth Amendment.

B.      Whether Law was Clearly Established

The Court finds that the law governing Fourth Amendment excessive force claims was clearly established at the time of the underlying March 2003 incident.  Prior to March 2003, the law was clear that an officer's seizure of a suspect is unreasonable if the officer uses excessive force during an arrest or investigatory stop. Graham v. Connor, 490 U.S. 386, 394 (1989). Where the right is clearly established, a defendant "rarely" is able to succeed with a qualified immunity defense.  Cannon v. City & County of Denver, 998 F.2d at 874.  Defendants nevertheless contend that they are entitled to qualified immunity if they were reasonably mistaken about the lawfulness of his actions.

A plaintiff's claim of excessive force against law enforcement officers in the context of a seizure or arrest is analyzed under the "objective reasonableness" standard of the Fourth Amendment.  Graham, 490 U.S. at 388.  A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, "acknowledging that the officer

16

may be forced to make split-second judgments in certain difficult circumstances."  Olsen v.

Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002) (quoting Medina v. Cram, 252 F.3d

1124, 1131 (10th Cir. 2001)).  Factors to consider in assessing whether the force used was

reasonable include: the alleged crime's severity, the degree of potential threat that the suspect

poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest.

Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005).

   Moreover, an officer who stands by and does not prevent a fellow officer's use of

excessive force may be liable under § 1983.  Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423,

1433 (10th Cir. 1984) (ruling that an officer who did not prevent fellow officer's use of excessive

force may be liable under § 1983), vacated on other grds., City of Lawton, Oklahoma v. Lusby,

474 U.S. 805 (1985).  The Tenth Circuit has held that the duty to intervene is clearly established.

Mick v. Brewer, 76 F.3d 1127 (1996) (officer who fails to prevent an excessive use of force can

be held liable for his "nonfeasance").

   The United States Supreme Court has cautioned against fusing the "objective

reasonableness" standard that attaches to a substantive Fourth Amendment inquiry with that

which is utilized in the second prong of the qualified immunity inquiry (i.e., whether the law was

clearly established such that it would be clear to a reasonable officer that the conduct was

unlawful in the situation he confronted).  Saucier v. Katz, 533 U.S. 194, 201 (2001).  In the

qualified immunity application of "reasonableness," the question is whether it would be clear to a

reasonable officer that the conduct was unlawful in the situation he confronted.  In such a case,

the circumstances must be such that "the defendant was so 'prevented' from knowing that his

actions were unconstitutional that he should not be imputed with knowledge of a clearly

17

established right." Cannon, 998 F.2d at 874 (citation and footnote omitted).   However,

Defendants have presented no facts which would suggest that the March 20, 2003 demonstration

posed circumstances which would have made it difficult for an officer to gauge what force would

be considered excessive under the Fourth Amendment.

C.      Whether Summary Judgment is Appropriate

        Defendants can still prevail on summary judgment if they can show that there are no

material issues of fact and as a matter of law, their conduct was objectively reasonable.  They

defend any force used in Plaintiff's arrest as part of a "pain compliance" approach, pointing out

that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers, violates the Fourth Amendment." Saucier v. Katz, 533 U.S. 194, 209 (2001) (citation

omitted); Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (plaintiff's claim that officer

kicked his foot "very hard" did not contravene Fourth Amendment's reasonableness standard).

        Plaintiff alleges that the force used during his arrested amounted to much more than a

push or shove.  No police officer notified him that he was under arrest, nor did they ask him to

come along peacefully.  Instead of following a "continuum of force" which is initiated by an

officer's presence and verbal request, see, Ex. 6 (Campbell Dep.) at 18:19-25, the arresting

officers allegedly tackled Plaintiff with no warning, using force sufficient to tear the tendon in his

wrist.  He was then dragged into a cloud of tear gas which caused a severe asthmatic reaction,

and thus, an inability to walk.  There is no indication, even by Defendants' version, that Plaintiff

ever resisted arrest or attempted to evade arrest, which would have called for the use of a higher

degree of force.  See, e.g., Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001) (finding

no excessive force where suspect who had violated a traffic law was pulled from car, pushed

against car and handcuff because he appeared to be fleeing).

Defendants argue that officers may use a reasonable amount force to take a suspect into custody.  See, e.g., Dixon v Richer, 922 F.2d 1456, 1462 (10th Cir. 1991) (noting that what plaintiff characterized as "kick" could be characterized as a "reasonable act" intended to prepare arrestee for pat down). However, a factfinder could reasonably believe Plaintiff's version, and find that using force sufficient to tear a wrist tendon, shoving Plaintiff to the ground, kneeing him in the back and dragging him across the street through lingering teargas were not reasonable measures to take Plaintiff into custody.

Sgt. Hill concedes that he supervised the arrest and was present when the group of line officers were dispatched to carry out the arrest.  Whether he failed to intervene is an issue which should be resolved by the fact finder.  Because the roles of Officer Gonzales and Sgt. Hubbard in Plaintiff's arrest are disputed by the parties, their involvement in Plaintiff's claim for excessive force also needs to be resolved at trial.  Therefore, summary judgment is denied on Plaintiff's excessive force claim.

**IV.    Supervisory Liability Under § 1983**

Plaintiff alleges that Defendant Hill "failed to adequately supervise or control [his] subordinate officers in such a way that would prevent the excessive use of force by these subordinates."  Second Amended Complaint, ¶ 54.[9]  Defendant is correct that he cannot be liable for the alleged unconstitutional acts of his subordinates solely by virtue of his supervisory role.

---

[9]  The Second Amended Complaint includes Defendants Hill and Hubbard in Plaintiff's claim for supervisory liability under § 1983, but does not include Defendant Nick Gonzales. However, Defendants' summary judgment motion seeks dismissal of this claim against Defendant Hill only.

A.      Whether the Law was Clearly Established

The law regarding supervisory liability under § 1983 was clearly established at the time the

underlying events took place.  There is no concept of strict supervisor liability under § 1983.

Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation and citation omitted).   In order to

impose supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a

defendant was in charge of other state actors who actually committed the violation."  Beedle v.

Wilson, 422 F.3d 1059, 1073-74 (10th Cir. 2005) (citing Jenkins, 81 F.3d at 994)).  A supervisor

is not liable under § 1983 for the actions of a subordinate unless an "affirmative link" exists

between the constitutional deprivation and either the supervisor's personal participation or his

failure to supervise.  Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993).  A plaintiff

may satisfy this standard by showing that the defendant-supervisor personally directed the

violation or had actual knowledge of the violation and acquiesced in its continuance.  Beedle, 422

F.3d at 1073-74.

B.      Whether Summary Judgment is Appropriate

Sgt. Hill seeks dismissal of this claim on the basis that he had no personal knowledge or

acquiescence in the alleged deprivation of Plaintiff's constitutional rights.

The Court disagrees that Sgt. Hill's participation in the March 20, 2003 demonstration

was insufficient to constitute an "affirmative link" for the alleged unconstitutional behavior of Sgt.

Hill's subordinates.  Sgt. Hill testified that he supervised the arrest after the arrest order was

given, gave direct orders to the line officers to carry out the arrest order given by Captain

Gonzales, and was standing behind the line officers carrying out the arrest.  Ex. D. at 9:14-23, and

10:1-9.  Thus, Sgt. Hill's presence and direction during the arrest could be viewed by a fact finder

as acquiescence in the alleged constitutional violations.  Summary judgment is denied on this claim.

## CONCLUSION

For his Fourth Amendment claims of unlawful arrest and excessive force, Plaintiff has met his burden on qualified immunity, and has also presented issues of material fact which suggest that a reasonable fact finder could find that Plaintiff's arrest was unlawful, and that excessive force was used during his arrest.  Plaintiff has also presented sufficient circumstantial evidence to create a factual issue regarding whether Officer Nick Gonzales and Sgt. Hubbard played a role in Plaintiff's arrest, and in the use of force during his arrest.  Thus, the Court denies summary judgment on those claims.

Plaintiff has sufficiently alleged the existence of an affirmative link between Sgt. Hill's actions at the demonstration and Plaintiff's alleged injuries to allow the claim of supervisory liability under §1983 to proceed to trial.   Summary judgment is denied on this claim as well.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Partial Summary Judgment for Dismissal of Plaintiff's Fourth and Fourteenth Amendment Unlawful Arrest, Excessive Force, and Supervisory Liability claims, filed by Defendants Steven Hill, Nicholas Gonzales and Dave Hubbard (**Doc. 165**) is DENIED for reasons set forth in this memorandum opinion and order.

_____
UNITED STATES DISTRICT JUDGE