## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

JOHN D. FOGARTY

        Plaintiff,

vs.                                   No. CIV 05-26 WJ/LFG

GILBERT GALLEGOS, JOHN GONZALES,
DONALD KEITH, MICHAEL FISHER,
STEVEN HILL, NICK GONZALES and
DAVE HUBBARD in their individual capacities,
and the CITY of ALBUQUERQUE,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PARTIAL SUMMARY JUDGMENT ON  STATE LAW TORT CLAIMS

THIS MATTER comes before the Court upon a Motion for Partial Summary Judgment for Dismissal of Plaintiff's State Law Tort claims, filed by Defendants Hill, Hubbard and N. Gonzales on May 31, 2006 **(Doc. 164)**. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and will be denied.

### Background

Plaintiff John Fogarty is a physician and faculty member in the UNM Family Medicine Department and the Public Health Department.  He was a member of a group of people who gathered in front of the University of New Mexico ("UNM") Bookstore on the evening of March 20, 2003.   Plaintiff brings this lawsuit as a result of his arrest during the protest, claiming that Defendants violated his constitutional and state law rights.

I.     **Plaintiff's Contentions**

Plaintiff was peacefully demonstrating and acting in complete accord with the law.

Almost immediately after the demonstrators, including Plaintiff, started gathering, APD officers, including the named Defendants, began arriving at the scene.  The identities of the APD officers were obscured, either because they were dressed in riot gear, or because their badge numbers were partially obscured with black tape.  Officers closed off Central Avenue to traffic in the area of the demonstration.  Police commands coming over the public address system were unintelligible.  APD officers fired teargas into the crowd.  Plaintiff moved from Central Avenue to the steps in front of the bookstore.  More teargas was deployed into the crowd of demonstrators.  Plaintiff was shot by Defendant Fisher with a "pepperball" round, resulting in bruising and inflammation.  APD officers lifted and carried Plaintiff directly into a cloud of teargas.

Plaintiff, who has a history of asthma, suffered a severe asthma attack and was unable to breathe properly or to walk.  When Plaintiff could no longer walk, officers yanked Plaintiff's arms behind his back and threw him to the ground.  Plaintiff was restrained in handcuffs, and an officer shoved his knee into Plaintiff's back.  Plaintiff's severe asthma attack continued.  APD officers then dragged Plaintiff by his arms to a police van, where he remained for some time before being treated by ambulance personnel.  Plaintiff was never charged with any crime as a result of his actions on March 20, 2003.  As a result of Defendants' unlawful actions, Plaintiff suffered physical injuries, physical pain and suffering, stigmatization, lost income, and psychological and emotional distress.

## II.    Defendants' Contentions

Defendants' contentions vary according to each Defendant's role in the situation. Generally, Defendants describe a situation where the crowd of protestors became increasingly aggressive, out of control, and posed a possible danger to motorists and other protestors when they spilled out onto Central Avenue and began an unauthorized march through heavily-trafficked

streets and eventually coming close to encroaching on an interstate route.  Some of the protestors sat down in the street, threw projectiles at police and generally failed to obey lawful and repeated police commands.  When the crowd refused to leave the area, a limited amount of tear gas was deployed.  Defendants maintain that the actions taken by the individual Defendants were objectively reasonable given the totality of the circumstances facing them on March 20, 2003, and were taken in accordance with acceptable police procedures and practices.

## III.   Plaintiff's Allegations in the Complaint

The Second Amended Complaint asserts both civil rights violations and state law tort claims against the individual Defendants directly, against certain Defendants on the basis of supervisory liability, and against the City of Albuquerque ("City").  Plaintiff requests compensatory and punitive damages, and attorney fees, based on the following claims:

Count I:        Unlawful Arrest in Violation of the Fourth & Fourteenth Amendments against Defendants Donald Keith, Steven Hill, Dave Hubbard and Nick Gonzales;[1]

Count II:       Excessive Use of Force in Violation of the Fourth & Fourteenth Amendments against Defendants Donald Keith, Steven Hill, Dave Hubbard, John Gonzales, Michael Fisher and Nick Gonzales;

Count III:      Claims of Supervisory and Municipal Liability under 42 U.S.C. § 1983 against Defendants City of Albuquerque and Gilbert Gallegos;

Count IV:       Claims of Supervisory Liability under 42 U.S.C. § 1983 against Defendants Donald Keith, Steven Hill, Dave Hubbard and John Gonzales;

Count V:        State Tort Claims (assault, battery and false arrest) against Defendants Donald

---

[1]  Plaintiff alleges claims brought under the Fourth Amendment as made applicable to the states through the Fourteenth Amendment.  Plaintiff is not alleging separate substantive claims under the Fourteenth Amendment.

Keith, Steven Hill, Dave Hubbard, John Gonzales, Michael Fisher and City of

Albuquerque;

Count VI:    Negligence, Gross Negligence and Recklessness of Law Enforcement Officers

Causing Enumerated Torts against Defendants Donald Keith, Steven Hill, Dave

Hubbard and John Gonzales.

This motion addresses only Plaintiff's state law tort claims against Defendants Hill,

Hubbard and Nick Gonzales.   Defendant Hill ("Sgt. Hill") is a Special Weapons and Tactics

("SWAT") Sergeant employed by the Albuquerque Police Department ("APD.")  Defendant Nick

Gonzales ("Officer Gonzales") is a law enforcement officer employed by the APD, and will be

referred to as "Officer Gonzales" to differentiate between him and Defendant John Gonzales, who

will be referred to as "Captain Gonzales" where he is mentioned in this discussion.  Defendant

Hubbard ("Sgt. Hubbard")is a Sergeant employed by the APD.[2]

## IV.    Undisputed Facts Relating to this Motion

It is undisputed that during the course of the demonstration, Plaintiff was arrested, and

that three to five officers were involved in his arrest.  Parties dispute the number of officers

present at the event. Defendants' tally is 50-60 officers, while Plaintiff contends there were 75

officers present, relying on Captain Gonzales' own calculations.  See, Defts' Undisp. Mat' Fact

No. 4 and Response thereto.

The parties acknowledge that a videotape exists which shows Plaintiff being arrested by

three to five APD officers.  The identities of the officers were obscured during the riot.  Officers

---

[2]  Separate summary judgment motions have been filed by Defendant Donald Keith, an Emergency Response Team Sergeant employed by APD, and Defendant Michael Fisher, a law enforcement officer employed by the APD.  After those motions had already been filed, Plaintiff amended the complaint twice to include Defendants Hill, Hubbard, J. Gonzales and N. Gonzales.

at the scene wore full riot gear including face masks, and those not in riot gear had black tape

partially covering their badges, which obscured their badge numbers.  The APD officers dressed in

riot gear had no visible personal identification numbers or names on their uniforms.  Initial Pretrial

Report at 3.

Based on the events which occurred during the protest, Plaintiff promptly filed a complaint

with the City of Albuquerque ("City") Police Oversight Commission's Independent Review

Officer ("IRO"), Jay Rowland.  The administrative complaint was received on April 17, 2003.  An

investigator for the City's IRO, Beth Mohr, began to actively investigate Plaintiff's complaint in

an effort to determine the identities of the APD officers who were involved in Plaintiff's arrest.

Ms. Mohr also investigated complaints filed by other protestors.

Ms. Mohr sent Plaintiff a certified letter on June 2, 2003 requesting that Plaintiff make

himself available for interview, and respond by June 20, 2003.  Plaintiff advised that he wanted his

attorney present at the interview.  Ex. D.  On June 13th, Ms. Mohr received the signature card

back confirming that he received the certified letter.  Ex. C at 8:10-9:9.  Ex. E at 2.  On June 16,

2003, Plaintiff left a voice mail message for Ms. Mohr requesting that his complaint be

inactivated.  Ex. C at 9:2-5: Ex. E at 2.

In a letter dated June 25, 2003 IRO Rowland advised Plaintiff that based on his request to

inactivate his complaint, the IRO would no longer be investigating his complaint.  Ex. D.  Ms.

Mohr then closed her investigation before discovering the identities of the APD officers who

participated in Plaintiff's arrest.

On January 6, 2006, Plaintiff deposed investigator Beth Mohr. During the deposition, Ms.

Mohr testified that after Plaintiff withdrew his complaint, she interviewed an officer who told her

the following:

> There was an officer who I remember telling me that he had one half of a guy. And they started out with the guy on the steps, and they went out into the street. And then the guy dropped to his knees, and then they were sort of dragging him. And it was around the time that Dr. Fogarty would have been arrested. . . Now by the time I interviewed this person, I wasn't looking into Dr. Fogarty's complaint anymore, and so I didn't really follow up. . . in my head it's an ERT ("Emergency Response Team") guy, but I can't say for sure.

Ex. C at 33:17-34:12. Sgt. Hill, Sgt. Hubbard and Officer Gonzales were not made aware that Plaintiff had filed a complaint with the IRO. Sgt. Hill retired from the APD in June 2003, about a year and a half before Plaintiff filed his original complaint in federal court. Plaintiff does not dispute that Sgt. Hill, Sgt. Hubbard and Officer Gonzales first became aware of the filing of the federal court complaint until after December 1, 2005 when they were sent notices that Plaintiff's counsel would be taking their depositions. Plaintiff deposed these officers in January of 2006.

## VI.    Legal Standard

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir.1994); Bausman v. Interstate Brands Corp., 252 F.3d 1111 (10th Cir. 2001).

### Discussion

Defendants seek dismissal of Plaintiffs' state law tort claims in Counts V and VI because they are barred by the applicable statute of limitations. Plaintiff filed the initial complaint in federal court on January 10, 2005, which did not allege any claims against Sgt. Hill, Sgt. Hubbard

or Officer Nick Gonzales.[3]   On February 6, 2006, Plaintiff filed the First Amended Complaint (Doc. 108).  Sgt. Hill, Sgt. Hubbard and Officer Gonzales were included as Defendants in its assertions of Fourth Amendment violations;[4] supervisory liability under § 1983 (excluding N. Gonzales); state tort claims of assault, battery and false arrest; and claims of negligence, gross negligence and recklessness of supervisory law enforcement officers (excluding N. Gonzales). The Second Amended Complaint, filed April 4, 2006 (Doc. 148), contains these same claims.

**I.      Whether  Plaintiff's Claims are Barred by the Applicable Statute of Limitations**

Plaintiff concedes that under usual circumstances, his claims would be barred under the two-year statute of limitations that governs claims brought under the New Mexico Tort Claims Act ("Tort Claims Act"), NMSA 1978, § 41-4-15(A).  However, I agree with Plaintiff that this case is unusual in the difficulties Plaintiff has experienced in trying to identify the officers who arrested Plaintiff on March 20, 2003.

A.     Course of Discovery

Exhaustive efforts by Plaintiff to uncover the identities of the arresting officers has been to little avail, even after 27 volumes of discovery and 30 depositions of APD officers and  witnesses. Plaintiff has amended the complaint twice, trying to pin down the identities of these officers. Defendants point out that discovery was extended three times, suggesting that Plaintiff has had plenty of time in which to determine the identity of the arresting officers, and possibly a lack of due diligence on Plaintiff's part.  See, Defts' Undisputed Material Facts ("UMF") 19-22.  A look at the history of this case reveals does not support the latter contention.

_____

[3] Claims in the initial complaint were directed against Defendants John Gonzales, Gallegos, Keith, Fisher and the City.

[4]  Nick Gonzales is omitted in the heading for Count V in the First Amended Complaint, but is included in ¶ 62.

The Initial Pretrial Report ("IPTR") provided that discovery would end on September 12, 2005.  Plaintiff sent discovery requests to the then-named Defendants within a couple of weeks after the IPTR was filed.  Plaintiff filed a motion in June regarding the insufficiency of Defendants' discovery responses (Doc. 32). The motion was granted in part by Chief Magistrate Judge Lorenzo Garcia.[5]  The responsive documents were produced at the end of August, 2005, thirteen days before the close of discovery.

The first extension (to October 26, 2005), though unopposed, was made at the request of APD Officers Keith and Fisher, other named Defendants in this action.  See, Doc. 70.  During this time, Plaintiff filed other motions to compel, in an effort to obtain documents and reports which would help identify the arresting officers, or at least to narrow down the possibilities from the list of 82 police officers identified in the IPTR as witnesses with "discoverable information." Judge Garcia granted these motions in part, as well.  See, Docs. 71, 72 & 73.  Responsive documents to these Orders were produced only a couple of weeks prior to the end of the October 2005 deadline.

The second extension of the discovery deadline (to January 25, 2006) was requested by both parties for different reasons.  Defendants recognized that they needed additional time to complete the discovery necessary to prepare the case for trial.  Plaintiff had just received the bulk of the documents produced in this case.  Further, Plaintiff's counsel had been appointed by the State Legislature to investigate a high-profile criminal case.

---

[5]  Plaintiff stated that certain motions which were filed in June and July (Docs. 32 and 38) were granted in part by Judge Garcia in on August 15, 2005 (Doc. 54).  However, only one of the motions was granted in part by the August 2005 Order.  The July motion was granted in part, but in a separate Order entered September 27, 2005 (Doc. 71).  Also, Plaintiff states that the disclosures were filed on November 10, 2006, which is obviously incorrect. The Court assumes that dates referring to future months in the current year actually refer to the year 2005.  See, Resp. at 10-12.

The reason for the third extension is more critical to this motion. In November 2005, Defendant Keith and Fisher filed Supplemental Disclosures purporting to have identified those officers who may have had a role in Plaintiff's arrest, or had knowledge of the same.[6] Between November 2005 and January 2006, Plaintiff took the depositions of those individuals, and as a result of the information obtained in the depositions, amended the complaint to add Defendants Hill, Hubbard and Nick Gonzales, and requested additional time for discovery.

B.      Documentation of Plaintiff's Arrest

Of particular note regarding the elusive nature of the arresting officers identity, is the fact that there has been no document or report commemorating the arrest. Under APD's Standard Operating Procedure, every police officer who assisted at the March 20, 2003 demonstration had the obligation to fill out a supplemental report if they participated in an arrest of any kind, regardless of whether charges were brought. This report was separate from, and in addition to, the actual arrest report done at the command post. See, Resp. (Doc. 173) to Mot. for Partial Sum. J.for Dismissal of Plaintiff's Fourth and Fourteenth Amendment Unlawful Arrest, Excessive Force, and Supervisory Liability Claims,  Ex. 7 at 15:15-16:1-11. At a briefing held at the end of the demonstration and attended by Deputy Chief Schultz and Chief Gallegos, Captain John Gonzales ordered all APD officers who "laid their hand on anybody" to issue a report.  See, Ex. 2 (Gonz. Dep.) at 17-18 (this motion). Sgt. Hill admits that no report was completed regarding Plaintiff's arrest, although he also gave direct orders to his subordinates to do so. Ex. 1 (Hill Dep. at 16:5-11-22 (this motion). To this date, no arrest report or supplemental report has

---

[6] One such individual who was deposed is Pat Guerrera, a sergeant in charge of ERT officers the night of March 20, 2003. Officer Guerrera was specifically requested by counsel for defendant officers to identify the arresting officers by viewing the videotape of Plaintiff's arrest. He was unable to do so. See, Resp. (Doc. 174) to Motion for Partial Summary Judgment for Dismissal of Plaintiff's Fourth and Fourteenth Amendment, Ex. 9 at 5:1-14.

surfaced through discovery, and Defendants' general stance throughout the motions practice of this case is that none of the named Defendants carried out the arrest, nor do they know who did.

## II.      Exceptions to the Limitations Period

There are several exceptions to the rule that claims brought under the Tort Claims Act are barred after two years from the date of the injury's occurrence. I agree with Plaintiff that the circumstances of this case regarding the naming of Defendants warrant an inquiry into whether any of the following exceptions apply: the Relation Back Doctrine, the Doctrine of Fraudulent Concealment, and the Doctrine of Equitable Estoppel. Plaintiff argues that all three apply here.

### A.      Relation Back

Under Fed.R.Civ. P.15(c)(3), an amendment to a pleading relates back to the date of the original pleading in any of three circumstances: (1) when the statute of limitations governing the cause of action permits relation back; (2) when the claim or defense in the amended pleading arose from the same transaction or occurrence as that set forth in the original pleading; or (3) when a new party is joined and it is not unfair, as defined in Rule 15(c) for the claim against that party to be treated as if it was raised on the date the original pleading was filed.

Plaintiff did not name Sgt. Hill, Sgt. Hubbard and Officer Gonzales in the original complaint. The complaint was amended to include these Defendants two years and ten months after the arrest occurred. The amended complaint including Sgt. Hill, Sgt. Hubbard and Officer Gonzales is clearly outside of the two year statutory period, and the claims asserted in the First Amended Complaint arose from the same transaction or occurrence as that which is set forth in the original pleading. Thus, in order for the First Amended Complaint to relate back to the initial complaint, Plaintiff must meet all the requirements under Rule 15(c)(3):

the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule

> 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identify of the proper party, the action would have brought against the party.

Fed.R.Civ.P. 15(c)(3); see Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1226-27 (10th Cir.1991) (all requirements of Rule 15(c)(3) must be met in order for plaintiff's amended pleadings to relate back to the date of the original). Plaintiff must therefore show *both* that on or before May 10, 2005 (which is 120 days of the date of the original complaint), Sgt. Hill, Sgt. Hubbard and Officer Nick Gonzales (A) received notice of the institution of the action such that they would not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identify of the proper party, the action would have brought against them.

Plaintiff does not dispute the fact that Sgt. Hill, Sgt. Hubbard and Officer Gonzales first became aware that Plaintiff filed a complaint in court until December 1, 2005 when they were provided notice of their depositions. Until that time, these Defendants were listed as one of 82 potential witnesses listed on the Initial Pretrial Report which was filed on April 8, 2005. Plaintiff notes that Sgt. Hill admitted that he ordered and supervised Plaintiff's arrest, and that Sgt. Hubbard and Officer Gonzales participated in Plaintiff's arrest. However, Defendants' participation in, or knowledge of, the incident which gave rise to Plaintiff's lawsuit does not constitute per se reasonable grounds for notice of an institution of an action. Archuleta v. Duffy's Inc. 471 F.2d 33, 35 (10th Cir. 1973) ("action," as used in Rule 15(c), means a lawsuit, and not the incident giving rise to a lawsuit).

This is not case where the amended parties belong to a parent-subsidiary relationship where the entity was sued in the original complaint. See, e.g., Andrews v. Lakeshore

Rehabilitation Hosp., 140 F.3d 1405, 1408 n. 5 (11th Cir. 1998) (parent company holding 100% of subsidiary deemed to have had notice where subsidiary had notice of suit). Nor does the amended complaint simply correct a "misnomer." See, e.g., Datskow v Teledyne, Inc., 899 F.2d 1298, 1301-02 (2d.Cir. 1990) (properly served defendant company deemed to have had adequate notice where plaintiff mislabeled name of company). In Eison v. McCoy, 146 F.3d 468 (7th Cir. 1998), plaintiff listed police officers' aliases, and later filed an amended complaint which identified the defendants with proper names after the expiration of the limitations period. The Seventh Circuit determined that Rule 15(c)(3) was implicated because the amendment was not simply formalistic. The court further determined that the initial complaint with the aliases did not provide adequate notice to the officers that were sued of the pendency of the claims against them because use of aliases would not enable a police force that employed more than 17,000 officers to determine which of its employees were being named as defendants. 146 F.3d at 471-72. The decision noted that the Rule 15(c)(3) "does not provide for relation back when the reason the original complaint is in insufficient is a simple lack of knowledge of the identity of the proper party." Id., at 472. As a result, one of the counts in the complaint was dismissed as time barred.

In this case as well, Plaintiff's failure to identify Sgt. Hill, Sgt. Hubbard and Officer Gonzales was not a misnomer or mistake. The identities of these parties were not known until after the required notice period under Rule 15(c)(3) had passed, Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir. 2004) (as a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a "mistake concerning the identity of the proper party" within the meaning of Rule 15(c)(3)(B)). Thus, the amended complaint which adds these Defendants for the state law tort claims can not relate back to the original complaint. However, dismissal of these parties as to the state law tort law claims is not warranted, because I find that one of the

exceptions to the limitations period applies here – the doctrine of equitable estoppel.

B.      Doctrine of Equitable Estoppel

Plaintiff argues that the doctrine of equitable estoppel should apply in this case to toll the statute of limitations for the state claims against Sgt. Hill, Sgt. Hubbard and Officer Gonzales.

The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of  knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.  Hagen v. Faherty, 133 N.M. 605, 609 (N.M.App., 2003).

Based on Plaintiff's conduct during the course of discovery, it is clear that Plaintiff has exercised more than due diligence probing to uncover the identities of the officers involved in his arrest.  It is also clear that the Defendant officers' resistance to coming forth with these individuals' names during discovery played no small part in Plaintiff's delay in adding Sgt. Hill, Sgt. Hubbard and Officer Gonzales to the complaint.

I find that the elements of equitable estoppel are met under the particular circumstances in this case.  The identities of the APD officers were purposely obscured during the riot, and the concealment of their identities was compounded by the failure of *any* of the arresting officers or their supervisors to complete the APD required arrest and use-of-form reports.  These individuals were just several out of 82 potential defense witnesses listed on the IPTR, which was filed just

13

one month shy of the 120-day notice period under Rule 15(c)(3).  In his continued efforts to

narrow down many possibilities, Plaintiff hit further obstacles in the form of the inadequacies of

Defendants' discovery responses, forcing Plaintiff to spend months filing motions to compel

before obtaining sufficient leads (November 2005) to justify additional depositions.  Defendants

would have known that Plaintiff's allegations of state law tort claims depended on an

identification of the officers alleged to have committed those torts.

Defendants attempt to shift the blame to Plaintiff, inferring that Ms. Mohr would have

eventually uncovered the identities of the arresting officers had Plaintiff not withdrawn his

administrative complaint.  I agree with Plaintiff that this contention is disengenuous.  First,

Plaintiff was not required to see the administrative process through before filing a complaint in

court.  Second, Defendants have taken the position that it was difficult to determine which

officers -- including the arresting officers -- were behind the face shields and gas masks.[7]  The

problems which Plaintiff has encountered in obtaining the arresting officers' identities, then, are

less concerned with fading memories, and more related to steps the Defendant officers have taken

to conceal their identities during the riot by their attire, and later by not filing any arrest reports.

Plaintiff maintains that Defendants have purposely withheld the identity of the officers who

arrested Plaintiff.  Defendants argue that there is no evidence of this.  However, Defendants

acknowledge that the identities of the arresting officers were obscured as a result of APD policy,

regardless of the purpose of that policy.  Defendants also acknowledge that all police officers

were required to file a report if they participated in any arrest, and all supervisors were supposed

---

[7]  See, n. 6, above; Resp. to Defendant John Gonzales' Motion for Sum. J., Ex. 2 at 5:1-17, & Ex. 3 at 20:22-21:18; Motion for Partial Summary Judgment for Dismissal of Plaintiff's Fourth and Fourteenth Amendment Unlawful Arrest, Excessive Force, and Supervisory Liability claims filed by Defendants Hill, Hubbard and N. Gonzales, Ex. D at 14:8-19.

to fill out a use-of-force form if any of their subordinates used any level of force.  It is undisputed that three to five APD police officers carried out the arrest of Plaintiff, yet not one of these reports has come to light, from any individual police officer.   These officers know who they are.  Accordingly, I conclude that Plaintiff's state law tort claims will be allowed to proceed, notwithstanding that Plaintiff first amended the complaint to include Sgt. Hill, Sgt. Hubbard and Officer Gonzales after the two-year limitations period had expired, on the doctrine of equitable estoppel.  My ruling on this issue obviates the need to further address Plaintiff's alternative exception to the statute of limitations, fraudulent concealment.

**Conclusion**

Plaintiff's First Amended Complaint, which first named Sgt. Hill, Sgt. Hubbard and Officer Gonzales as Defendants, was filed past the two-year statutory period for claims asserted under the New Mexico Tort Claims Act.  The First Amended Complaint does not meet the requirements of Rule 15(c)(3) of the Federal Rules of Civil Procedure in order for the First Amended Complaint (and therefore the Second Amended Complaint, which contains the same claims) to relate back to the initial complaint.  However, the circumstances of this case warrant applying the doctrine of equitable estoppel to allow Plaintiff's state law tort claims to proceed against these Defendants.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Partial Summary Judgment for Dismissal of Plaintiff's State Law Tort claims, filed by Sgt. Hill, Sgt. Hubbard and Officer Gonzales **(Doc. 164)** is hereby DENIED for reasons set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE