# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

JOHN D. FOGARTY

          Plaintiff,

    vs.                                        No. CIV 05-26 WJ/LFG

GILBERT GALLEGOS, JOHN GONZALES,
DONALD KEITH, MICHAEL FISHER,
STEVEN HILL, NICK GONZALES and
DAVE HUBBARD in their individual capacities,
and the CITY of ALBUQUERQUE,

          Defendants.

## MEMORANDUM OPINION AND ORDER

    In this civil rights case, Plaintiff alleges that his constitutional and state law rights were violated by Defendants in connection with his peaceful participation in a political demonstration which took place in front of the University of New Mexico ("UNM") Bookstore on the evening of March 20, 2003.  This Memorandum Opinion and Order addresses Defendants' following summary judgment motions in which Plaintiff's response was based on Fed.R.Civ.P. 56(f):

    (1)  Defendants' Motion for Partial Summary Judgment: Dismissal of Plaintiff's Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, Supervisory Liability and Respondeat Superior claims, filed January 25, 2006 (**Doc. 99**);

    (2)  Sgt. Keith's Motion for Summary Judgment: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Unlawful Arrest and Excessive Force Claims and State law Assault, Battery and False Arrest Claims, filed January 25, 2006 (**Doc. 101**); and

    (3)  Officer Fisher's Motion for Summary Judgment: Dismissal of Plaintiff's Fourth and

Fourteenth Amendment Excessive Force, Assault, Battery and False Arrest Claims, filed January

25, 2006 (**Doc. 102**).

**Background**

The Second Amended Complaint asserts both civil rights violations and state tort claims

against the individual Defendants directly, against certain Defendants on the basis of supervisory

liability, and against the City of Albuquerque ("City").  Plaintiff requests compensatory and

punitive damages, and attorney fees, based on the following claims:

Count I:        Unlawful Arrest in Violation of the Fourth & Fourteenth Amendments against
                Defendants Donald Keith, Steven Hill, Dave Hubbard and Nick Gonzales;[1]

Count II:       Excessive Use of Force in Violation of the Fourth & Fourteenth Amendments
                against Defendants Donald Keith, Steven Hill, Dave Hubbard, John Gonzales,
                Michael Fisher and Nick Gonzales;

Count III:      Claims of Supervisory and Municipal Liability under 42 U.S.C. § 1983 against
                Defendants City of Albuquerque and Gilbert Gallegos;

Count IV:       Claims of Supervisory Liability under 42 U.S.C. § 1983 against Defendants
                Donald Keith, Steven Hill, Dave Hubbard and John Gonzales;

Count V:        State Tort Claims (assault, battery and false arrest) against Defendants Donald
                Keith, Steven Hill, Dave Hubbard, John Gonzales, Michael Fisher and City of
                Albuquerque;

Count VI:       Negligence, Gross Negligence and Recklessness of Law Enforcement Officers
                Causing Enumerated Torts against Defendants Donald Keith, Steven Hill, Dave
                Hubbard and John Gonzales.

**I.    Procedural History**

The Court has already largely denied three of Defendants' summary judgment motions

_____

[1] Plaintiff alleges claims brought under the Fourth Amendment as made applicable to the
states through the Fourteenth Amendment.  Plaintiff is not alleging separate substantive claims
under the Fourteenth Amendment.

regarding other named Defendants John Gonzales, Sgt. Hill, and Officers Hubbard and Nick Gonzales.[2]  Those Defendants were added as parties when Plaintiff amended the Complaint, following a third and last extension of the discovery period.  <u>See</u> Doc. 199 at 8-9 (Court's description of course of discovery).

Three summary judgment motions are still pending rulings from the Court, and are the subject of this Memorandum Opinion and Order.  Defendants Keith and Fisher were named parties in the initial complaint, and filed summary judgment motions at the end of the second extension of the discovery period.  In his responses to those motions, Plaintiff presented a Rule 56(f) affidavit, contending that he needed to complete the course of the remaining three months of discovery in order to adequately respond to Defendants' motions.  At the end of discovery, by an Order to Show Cause entered by the Court, Plaintiff was given an opportunity to amend its response within a certain time frame.  <u>See</u>, Doc. 188.

Plaintiff's response to the Court's Order to Show Cause (Docs. 195 and 196) is essentially that the remaining discovery process did not produce the hoped-for results.  Plaintiff followed leads from Defendants Keith's and Fisher's supplemental disclosures, but still has not uncovered the identities of the three to five APD officers who arrested him on March 20, 2003.  I therefore proceed to address the issues on the remaining three summary judgment motions based upon the record that does exist thus far.

---

[2]  <u>See</u>, Doc. 193, Mem. Opin. & Order granting/denying in part Defendant J. Gonzales' Motion for Summary Judgment, granting summary judgment in favor of John Gonzales on state tort claim of false arrest (part of Count V).; Doc. 199, Mem. Opin. & Order denying Defendants Hill, N. Gonzales and Hubbard's Motion for Partial Summary Judgment on 4th and 14th Amendment Unlawful Arrest, Excessive force, and Supervisory Liability Claims; and Doc. 200, Mem. Op. & Order denying Defendants Hill, Hubbard and N. Gonzales' Motion for Partial Summary Judgment on Plaintiff's state law tort claims.

## II.    Factual Narrative

The underlying facts of this case are by now familiar to the Court, having been presented from several angles in the Court's analysis of the summary judgment motions on which the Court has already ruled. Those general facts apply equally to remaining motions.

### A.    Parties' Contentions

Plaintiff John Fogarty ("Plaintiff") is a physician and faculty member in the UNM Family Medicine Department and the Public Health Department. He decided to attend a political demonstration at the UNM campus on March 20, 2003 in order to voice his opposition to the war in Iraq. His attendance at the rally was for the purpose of a peaceful, non-violent, political demonstration. Plaintiff walked around the event and occasionally during the protest, he joined a group of drummers and played his African drum. Sometime around 7:00 p.m., APD officers released teargas into the crowd. Plaintiff maintains that there were no warnings prior to APD's deployment of teargas and pepperball shots and that their uses were unwarranted because the demonstration was non-violent. Plaintiff alleges that APD officers literally picked him up while he was sitting on the steps of the UNM Bookstore, yanked his arms behind his back, tore and broke the drum he had attached to his belt, knocked him to the ground, hyperflexed his wrist, placed him in handcuffs, and shoved a knee in his back. They then dragged him by his arms across the street through the lingering teargas to the police van. Plaintiff's contact with teargas allegedly resulted in an acute asthma attack, physical injuries, physical pain and suffering, stigmatization, lost income and emotional distress. Plaintiff was taken into custody, but no charges were brought.

Defendants' contentions vary according to each Defendant's role in the situation. Generally, Defendants describe a situation where the crowd of protestors became increasingly

4

aggressive, out of control, and posed a possible danger to motorists and other protestors when they spilled out onto Central Avenue and began an unauthorized march through heavily-trafficked streets and eventually coming close to encroaching on an interstate route.  Some of the protestors sat down in the street, threw projectiles at police and generally failed to obey lawful and repeated police commands.  When the crowd refused to leave the area, a limited amount of tear gas was deployed.  Defendants maintain that the actions taken by the individual Defendants were objectively reasonable given the totality of the circumstances facing them on March 20, 2003, and were taken in accordance with acceptable police procedures and practices.

B.    Identity Issue

This case requires the usual factual and legal inquiries into alleged constitutional and state law violations, but there is a peculiar wrinkle.  Plaintiff still does not know to a certainty the identities of the three to five APD officers who arrested him, despite a lengthy discovery period and exhaustive discovery efforts which included 27 volumes of discovery and 30 depositions, and despite the fact that the arrest was captured on videotape.[3]  The identities of the officers were obscured during the riot.  Officers at the scene wore full riot gear including face masks, and those not in riot gear had black tape partially covering their badges, which obscured their badge numbers.  The APD officers dressed in riot gear had no visible personal identification numbers or names on their uniforms.  Initial Pretrial Report at 3.

The Court has discussed the elusiveness of the arresting officers' identity in further detail in the Court's Memorandum Opinions and Orders pertaining to the summary judgment motions

---

[3]  Plaintiff would have had to depose somewhere between 70 to 80 officers in order to depose every single officer who assisted at the demonstration.

on which I have ruled.  See, Doc. 193 at 3, and 10-11; Doc. 199 at 14-15; Doc. 200 at 7-9.

(course of discovery).  The Court's skepticism of the individual Defendant officers' lack of recall,

or their ability to ascertain who these individuals are, matches that of Plaintiff.  Under APD policy,

every police officer who assisted at the March 20, 2003 demonstration was required to complete

and submit arrest reports if they detained or laid hands on any of the protestors.  Officers were

also reminded of this obligation at a briefing on the evening immediately following the

demonstration.  See, Doc. 200 at 9-10; Doc. 199 at 15;  Doc. 193 at 11 (Court's Memorandum

Opinions and Orders).  However, no such report from any of the arresting officers has ever

surfaced.   In addition, none of the thirty witnesses deposed by Plaintiff has admitted to being any

of these individuals, and amazingly, none had any specific knowledge about the exact identities of

these officers.  Defendants have implied that Plaintiff might have been able to discover who

arrested him had he not withdrawn his administrative complaint, based on an investigative

officer's statements that one of the officers she spoke with remembered a protestor whose

description matches that of Plaintiff.  Doc. 200 at 6.  However, Defendants do not furnish an

explanation as to why the leads from that investigation could not have produced a result in the

discovery pursued in the federal case.

       Keeping this backdrop of the case, along with this Court's previous findings in mind, I

address the remaining three summary judgment motions.

## I.    Plaintiff's Claims of Municipal Liability and Supervisory Liability

       Defendants seek dismissal of Counts III and IV in the Second Amended Complaint,

referring to Plaintiff's municipal liability claims against the City, and supervisory liability claims

against Defendants Gallegos and Keith.  Plaintiff alleges that the failure of Defendant Gallegos

and the City to adequately train and supervise law enforcement officers constituted deliberate indifference to Plaintiff's constitutional rights.

A.    <u>Municipal Liability Claims</u>

A municipality  cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978).  A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove:(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force or cause behind the constitutional deprivation. <u>Id</u>. at 694, <u>cited in</u> <u>Myers v. Okla County Bd. of County Commissioners et al.</u>, 151 F.3d 1313, 1320 (10th Cir. 1998).  A causal connection between the unconstitutional act and the authorized decisionmakers may be established when the governing body has exercised its decisionmaking authority with deliberate indifference to the constitutional rights of those affected by its decisions.  <u>Ware v. Unified School Distr. No. 492</u>, 902 F.2d 815, 819 (10th Cir. 1990) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)).

There are three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (plurality opinion) (quoted case omitted); or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." <u>Boyer v. Board of County Com'rs of County of</u>

Johnson County, 922 F.Supp. 476 (D.Kan. 1996) (citing Praprotnik, 485 U.S. at 127 and Jantz v. Muci, 976 F.2d 623 (10th Cir. 1992)).

Defendants offer facts regarding the basic and specialized training APD officers received regarding use of force and "less lethal munitions."  They contend that the APD policy on excessive force, which they present in part, is consistent with the objective reasonableness standard set forth in Graham v. Connor, 490 U.S. 386, 388 (1989).  Defendants also maintain that Plaintiff cannot prove his municipal liability claim based on "custom" because he cannot show a history of widespread prior abuse by APD which put the City on notice of inadequate training and supervision such that it must take corrective action to prevent similar occurrences of misconduct in the future.  Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (to impose liability for a § 1983 policy or custom claim, policy making official must have prior knowledge of or involvement in the misconduct of a subordinate).

1.     *Inadequate Training*

Plaintiff relies on the facts of the underlying event of March 20, 2003 to argue that APD officers were inadequately trained to handle the crowd. The adequacy of police training can serve as a basis for liability under § 1983 where such failure amounts to deliberate indifference to the rights of persons with whom subordinate officers come in contact.  City of Canton v. Harris, 489 U.S. 378 at 388.  There must be essentially a complete failure to train or training so reckless or grossly negligent that future misconduct is almost inevitable.  Meade v. Grubbs, 841 F.2d 1512 (10th Cir.1988).  Even where a city's policy is not itself unconstitutional, a single incident of excessive force can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy. Carr v. Bowen et al, 337 F.3d 1221 (10th Cir. 2003).

An entity's failure to train becomes a policy or custom when such failure reflects a deliberate or conscious choice by a municipality.  Zuchel v. City & County of Denver, Colo., 997 F.2d  730, 740 n.5 (10th Cir. 1993) (quoting City of Canton v. Harris, 489 U.S. 378 (1988)).[4]  In order to establish that a municipality was deliberately indifferent to the adequacy of its training program, a plaintiff must show: (1) a constitutional deprivation, (2) that the activity which caused the deprivation is a usual and recurring practice, (3) there is a causal connection between the failure to train and the constitutional deprivation, and (4) deliberate indifference on the part of the municipality in failing to train its officers.  Zuchel v. City & County of Denver, Colo., 997 F.2d 730, 734-35 (10th Cir. 1993).

Despite briefing of APD officers that occurred prior to the protest, there is evidence from which a jury could infer inadequate tactical training for such large-scale demonstrations.  For example, it was unclear whether protestors were allowed or authorized to march in the streets or whether compliance with police commands required protestors to clear out the UNM area entirely, or instead go onto UNM property.[5]  Officers did not attempt to approach Plaintiff and verbally request that he stop drumming.  Upon Captain Gonzales' order to "take the drum,"[6]

---

[4]  "Deliberate indifference" is the proper standard for determining when a governmental entity will be liable under § 1983 for constitutional wrongs committed by its employees.  This is different from the degree of fault which a plaintiff must show to make out an underlying claim of a constitutional violation.  See Ware v. Unified School Distr. No. 492, 902 F.2d 815, 818 -19 and n.2  (10th Cir. 1990) (citing City of Canton v. Harris, 489 U.S. 378 (1989)).

[5]  The internal affairs investigation determined that the orders being given by the police department did not apply to Plaintiff because he was out of the street and on the steps of UNM property at the time of his arrest.  Ex. 6 at 30.

[6]  There is a dispute in this case as to whether Captain Gonzales intended to have the drums removed, or the drummers arrested, but Defendant Gonzales' intent in giving this order is not relevant to this motion.

officers allegedly moved in from behind Plaintiff and assaulted him, handcuffed him, tore his wrist tendon, kneed him in the back, and dragged him into lingering tear gas.  This could be evidence of improper training in the appropriate levels of force. There is evidence that there may not have been adequate warnings prior to the deployment of tear gas, and that the use of less-lethal weapons may have provoked the crowd and created a more dangerous situation.[7]  Defendant Keith observed that for the March 20, 2003 demonstration, "the Police Department was caught totally off guard. . . ."  Ex. 7 at 47:12-15.

     None of the arresting officers complied with departmental requirements to complete supplemental reports or use of force forms after the demonstration, despite the fact that they were specifically ordered to do so at the briefing following the event.  Regardless of the existence of APD standard operating procedure which directed the officers to submit such reports, the fact that not one of the three to five arresting officers followed its directive could also indicate a failure to train or supervise.

     Plaintiff has presented triable facts regarding a constitutional deprivation. APD officers are frequently called upon to handle other such protests.  The March 20, 2003 protest was one of several other demonstrations which took place within a relatively short period of time.  See, Ex. 1 at 53:19-25.  Plaintiff has sufficiently shown a causal connection between a failure to train and: the circumstances which led to his arrest, injuries which occurred allegedly from the force which was used to effect his arrest (mentioned in the section above on Plaintiff's contentions), and the deployment of less lethal munitions.  Viewing all of these facts favorably to Plaintiff (which the

---

     [7] This Court has noted in previous findings on Defendants' other summary judgment motions, that the warnings issued to the crowd were not sufficiently close in time to the actual deployment of gas to give sufficient notice to people in the crowd. Ex. 6 at 17.

Court must do at this point), a fact finder could conclude that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton</u>, 489 U.S. at 390; <u>Carr</u>, 337 at 1229.

2.      *Final Policymaker*

Plaintiff's claims against the City may also proceed on another basis.  Municipal policy or custom may be established by a single decision taken by an official who "possesses final authority to establish municipal policy with respect to the action ordered." <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 480-81(1986).  However, municipal policy is not established unless the action taken is official in character because municipal liability is limited to acts which the municipality has officially sanctioned or ordered.  <u>Id</u>., 475 U.S. at 480.  Plaintiff has presented sufficient evidence that Defendant John Gonzales, who was the incident commander at the demonstration, had final authority to make decisions for the City at the event.[8]  Defendant Gonzales ordered the use of tear gas and other less lethal weapons, including pepperballs; made the call on whether to allow the protest to wind down, or to end the demonstration; and gave the orders which directly resulted in Plaintiff's arrest.

3.      *APD Policy*

Finally, APD had a policy of obscuring the identities of its officers in situations where

---

[8]  It is not clear whether Plaintiff is arguing that Captain Gallegos was final policymaker for the City, or was delegated that responsibility by Chief Gallegos, who, according to Plaintiff, listened to the events of the protest from his police vehicle several blocks away.  <u>See</u>, Ex. 1 at 41. However, Count III in the Second Amended Complaint alleges municipal and supervisory liability against only the City and Defendant Gallegos, not Defendant Gonzales.  Plaintiff does, however, assert claims of supervisory liability under § 1983 against Defendant Gonzales in Count IV.

SWAT (Special Weapons and Tactics team) or ERT (Emergency Response Team) are utilized.
As mentioned above, this policy has unfortunate ramifications for a plaintiff wishing to assert a
violation of his constitutional rights by any of these individuals.  The proposed rationale for this
policy was to discourage personalized threats to officers in riot situations.  See, Ex. A, ¶ 62.
However, the policy could encourage conduct for which there is no accountability (particularly
when officers fail to complete follow-up reports which would identify themselves).  A fact finder
could conceivably view this policy as displaying deliberate indifference to an individual's
constitutional rights, particularly this Plaintiff, whose case against Defendants may be
compromised by the effects of this policy.

 Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim of
municipal liability.

B. Supervisory Liability Claims

 In this motion, Defendants seek summary judgment on Plaintiff's supervisory liability
claims for Defendants Keith (asserted in Count IV of the Second Amended Complaint) and
Defendant Gallegos.(in Count III).[9]  The Court has already denied the dismissal of supervisory
liability claims against Defendants John Gonzales and Steven Hill.  See, Doc. 193 at 19-20 and
Doc. 199 at 19-20.   In the motion for partial summary judgment filed by Defendants Hill,
Hubbard and Nick Gonzales, Defendants sought dismissal of supervisory liability claims against
Defendant Hill, but not Defendant Hubbard.  (Plaintiff does not include Defendant Nick Gonzales

---

 [9]  Defendants argue for summary judgment on the supervisory liability claims for both
Defendant Gallegos and Keith in the motion regarding municipal liability (Doc. 99). They again
present argument on the supervisory liability claim brought against Defendant Keith in their
motion seeking dismissal of Plaintiff's claims against Defendant Keith (Doc. 101).

in the Count IV claim of supervisory liability).  See, Doc. 199 at 19 n.9.  Thus, I address here

Plaintiff's claims of supervisory liability against Defendant Keith asserted in Count IV, and against

Defendant Gallegos asserted in Count III, since this motion is filed on the behalf of these two

individuals only.

In order to impose supervisor liability under § 1983, "it is not enough for a plaintiff merely

to show a defendant was in charge of other state actors who actually committed the violation."

Beedle v. Wilson, 422 F.3d 1059, 1073-74 (10th Cir. 2005) (citing Jenkins v. Wood, 81 F.3d 988,

994 (10th Cir. 1996)).  A supervisor is not liable under § 1983 for the actions of a subordinate

unless an "affirmative link" exists between the constitutional deprivation and either the

supervisor's personal participation or his failure to supervise.  Butler v. City of Norman, 992 F.2d

1053, 1055 (10th Cir.1993).  A plaintiff may satisfy this standard by showing that the defendant-

supervisor personally directed the violation or had actual knowledge of the violation and

acquiesced in its continuance.  Beedle, 422 F.3d at 1073-74.

Plaintiff has presented sufficient evidence of Chief Gallegos' personal involvement with

the events of March 20, 2003 to justify allowing the claim of supervisory liability against

Defendant Gallegos to proceed to trial.  Defendant Gallegos was present at the protest the entire

time.  He communicated with Captain Gonzales during the protest, was aware of the orders that

were given by Captain Gonzales, and did not take issue with the way the event was handled.  Ex.

1 at 51:1-5 and at 72-73.  Defendant Keith attended the protest in the role of ERT Sergeant or

supervisor.  His job was to stand behind the first line of officers "and to protect the officers from

any threats to them by the use of . . . less lethal munitions."  Ex. 8 at 14:1-5. Defendant Keith

stated that he was given orders to shoot (with less lethal munition) anyone who "refuses to leave

Central." Ex. 8 at 16:12-15.  He was in the vicinity of Plaintiff's arrest.  Ex. 8 at 17:17-25.  I

agree with Plaintiff that, given the persistent obfuscation of the identities of the arresting officers,

the Court cannot conclude as a matter of law that Defendant Keith, who would have been

supervising the ERT officers at the demonstration, is entitled to summary judgment on Plaintiff's

claim of supervisory liability under § 1983.  Therefore, summary judgment is denied to

Defendants Gallegos and Keith on this claim.

C.      Plaintiff's State Law Tort Claims

        Defendants requests dismissal of Plaintiff's state law tort claims against Defendants named

in Count VI (J. Gonzales, Keith, Hill and Hubbard) for negligence in failing to supervise under the

New Mexico Tort Claims Act.  See, Cross v. City of Clovis, 107 N.M. 251, 253 (N.M. 1988) (a

law enforcement officer has the common law duty in any activity actually undertaken "to exercise

for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer

in light of the nature of what is being done").[10]  Defendants argue that there is no evidence which

shows that these Defendants' training or supervision caused them to commit an enumerated tort.

In addition, Defendants contend that dismissal is appropriate for Plaintiff's state tort claims of

assault, battery and false arrest against the Defendants named in Count V (J. Gonzales, Keith,

Hill, Hubbard, Fisher, N. Gonzales and the City), and therefore against the City based on the

_____

        [10]  Police officers may be liable for a common-law claim of negligent supervision that
results in the commission of an enumerated tort under the New Mexico Tort Claims Act.
Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dept.,121 N.M. 646, 916 P.2d 1313 (N.M.
1996) (citation omitted); see NMSA 1978 § 41-4-12 (setting forth specific torts for which
immunity has been waived for law enforcement officers including assault, battery, and false arrest
– which have been alleged in this case and form the basis for Count V in the Second Amended
Complaint).

theory of respondeat superior.[11]

The Court has already denied Defendant J. Gonzales' summary judgment motion on Plaintiff's state law tort claims of supervisory negligence alleged in Count VI, granted Defendant Gonzales' motion with regard to Plaintiff's state law tort claims of assault and battery in Count V, but denied the motion with regard to the false arrest claim in Count V.  See, Doc. 193 at 22-23.  I have also denied the motion filed by Defendants' Hill, Hubbard, and N. Gonzales, which argued dismissal of Plaintiff's state law tort claims asserted in Counts V and VI solely on the basis of statute of limitations.  See, Doc. 200.

1.    *Common Law Claims of Negligence Supervision*

As noted in the Court's findings regarding Plaintiff's state law claim of negligent supervision against Defendant J. Gonzales, see Doc.193 at 23, the evidence pertaining to the § 1983 supervisory liability claims applies as well to the state law supervisory liability claim in Count VI.   As discussed above, I have made findings previously on Plaintiff's § 1983 supervisory claims regarding Defendants J. Gonzales, Hill and Keith (the latter individual being discussed in the instant memorandum opinion).  Those findings necessarily preclude summary judgment for these Defendants on Plaintiff's state law claim of negligent supervision.  As for Defendant Hubbard, Defendant has neither argued nor presented undisputed material facts which would provide a basis for the dismissal of this Defendant on either the § 1983 supervisory claim or the state law negligent supervision claim.  Thus, dismissal is not appropriate for Defendant Hubbard on either claim as well.  Accordingly, Plaintiff's common law claim for negligent supervision in

---

[11]  Nick Gonzales is mentioned in the text of the Second Amended Complaint for Count V (¶ 61), but not the caption.

Count VI will proceed to trial as to all Defendants named in that count (Defendants J. Gonzales, Keith, Hill and Hubbard).

2.      *Tort Law Claims of Assault, Battery and False Arrest*

Defendants urge that claims against the City in Count V be dismissed on the basis that Plaintiff cannot show that the individual Officer Defendants committed any of the underlying torts of assault, battery or false arrest. In other words, Defendants argue that a municipality cannot be liable under a respondeat superior theory unless there is evidence of an underlying enumerated tort committed by an individual public employee. However, this argument is moot, since the Court has already found that claims of assault, battery and false arrest will proceed to trial, based on the Court's findings on summary judgment motions filed by Defendants J. Gonzales, N. Gonzales, Hill and Hubbard. Because disputes of fact still remain concerning whether Defendant Officers committed the alleged actions in Count V, these claims may still proceed against the City under a respondeat superior basis. See N.M.S.A. 1978 § 41-4-4 (provision making governmental entity responsible for the torts of its employees for which immunity is waived to a similar extent as a private employer would be under the doctrine of respondeat superior and to indemnify the employee for acts occurring in the scope of the employee's duties).

Defendants have filed a Notice of Supplemental Authority (Doc. 198) in which they argue that Plaintiff's inability to identify the arresting officers precludes them from suing the City, since the Tort Claims Act does not allow a direct action against a municipality. In support of this position, Defendants rely on cases which the Court finds have no bearing, either factually or legally, on the instant case. For example, in Lopez, Sr. v. Las Cruces Police Dept., 139 N.M. 730, 137 P.3d 670 (N.M.App.,2006), New Mexico Court of Appeals held that a plaintiff suing

16

under the Tort Claims Act does not need to name an individual public employee as a defendant in order to state a claim against the government entity.  Defendant seeks to limit Lopez to its express holding, noting that the decision does not necessarily excuse Plaintiff from the need to present evidence identifying a tortfeasor at trial.  I do not read Lopez so narrowly, since the court in its decision went so far as to note that a public employee is not even a necessary party in a Tort Claims Act action, and that while both entity and public employee can be sued, both need not be named. 139 N.M. at 736-37.  However, Lopez leaves intact the requirement that a plaintiff allege and prove the commission of an underlying tort by a public employee.

In Sickles v. City of Albuquerque, No. 01-1287 JP/DJS, slip op. at 10-11 (D.N.M. filed Oct. 21, 2002), the plaintiff tried to sue the city directly regardless of whether the named individual defendant was found liable for Fourth Amendment violations, on the basis that other officers, not named in the lawsuit, had information which proved his innocence of the criminal charge filed by defendant officer.  The plaintiff was attempting to sue the city directly, based on the conduct of officers not named in the suit.  However, Sickles did not address, and so does not answer the question which has stymied the Plaintiff in the instant case, which is: whether a case can proceed against a municipality under the Tort Claims Act where there is sufficient evidence that an underlying tort has been committed, where there has been diligent and exhaustive effort by a plaintiff to determine the identities of the individual tortfeasors, and where the difficulty facing that plaintiff was created by the defendants.

The Honorable James Parker, who authored Sickles, cited California First Bank v. State, 111 N.M. 64, 801 P.2d 646 (N.M.,1990), which held that a plaintiff could not sue entities directly

for "concurrent torts" based on a tort committed by sheriff's deputies, where the county was the only named entity which allegedly exerted enough of a right to control in order for vicarious liability to be possible.  California First Bank does not bolster Defendants' position, since Plaintiff in the instant case is not suing the City directly, but rather based on the conduct of certain APD officers.  Further, Defendants do not suggest (and there would be no evidence to support such a suggestion) that the City does not have the requisite level of control over APD and APD officers to allow vicarious liability against the City.

Last, in Rorabeck v. County of McKinley, Civ. No. 02-731 JB/RLP, slip op. at 7-10 (D.N.M. filed Oct. 16, 2003), the Honorable James Browning granted the individual defendants legislative immunity, and they were therefore considered dismissed from plaintiff's claims brought under the Tort Claims Act.  The Defendant Officers in the instant case have not been dismissed from this lawsuit.  Plaintiff's inability to specifically pinpoint the arresting officers, particularly given Plaintiff's efforts to do so, and Defendants' persistent lack of recall, can be favorably compared to the situation in Rorabeck where named defendants were dismissed from the case.

There is no doubt that Plaintiff has presented sufficient evidence of an underlying tortious act (namely, the assault, battery and false arrest alleged in the Second Amended Complaint) committed against him by certain of the individual APD officers remaining in this lawsuit.  Thus, Plaintiff's claims against the City will proceed to trial.

## II.    Summary Motions Filed by Defendants Keith and Fisher

Defendant seeks dismissal of Defendants Keith and Fisher on the basis that neither Defendant participated, supervised or even witnessed the arrest.

A.    Defendant Keith

Donald Keith was present at the March 20, 2003 demonstration in the role of an ERT sergeant. The function of an ERT team is to respond to any kind of disaster, including riots and demonstrations. Approximately 50-60 APD officers assisted at the demonstration that evening. Sgt. Keith was positioned just behind the skirmish line officers. Drummers who were protestors were both east of the skirmish line and north, on the steps of the UNM Bookstore. However, Defendant Keith states that he did not see the drummers to the north. Defendant claims that he recalls laying hands on only one protestor, and that this individual was not Dr. Fogarty, because that protestor was in the middle of Central Avenue, and not on the steps of the UNM Bookstore where Plaintiff was detained.

Plaintiff is unable to offer any evidence which would raise a factual dispute regarding Defendant Keith's representations or challenge his credibility on those representations. The undisputed facts support that Defendant Keith could not have participated in Plaintiff's alleged unlawful arrest or excessive force if he never laid hands on Plaintiff. For this reason, Plaintiff's claims of unlawful arrest, excessive force, and the state tort claims of assault, battery and false arrest (Counts I, II and V) will be dismissed against Defendant Keith.

However, I have already found that there is a factual dispute concerning the requisite connection between the alleged constitutional violations and Defendant Keith's supervisory role. Therefore, Sgt. Keith is not entitled to summary judgment on Plaintiff's claims of §1983 supervisory liability and state law claim of supervisory negligence (Counts IV and VI).

B.    Defendant Fisher

Michael Fisher is a law enforcement officer with APD, and member of one of APD's emergency response teams who responded to the protest. On the day of the protest, he was one

of two APD officers equipped with a pepper ball "less lethal munition."

Plaintiff alleges that Defendant Fisher hit him in the thigh with what he believed to be a "pepper ball" that caused a bruise and inflammation, but does not know from which direction he was shot or whether he was shot intentionally or accidentally.   Defendant Fisher's role that day, as he described it, was to "stand behind the first line of officers and to protect the officers from any threats to them by the use of my less lethal munitions."   Ex. 8 at 14:5-8.   Defendant Fisher stated that he fired pepperball rounds on orders to "deploy less lethal munitions to anyone that refused to leave Central Avenue."   Ex. 8 at 15:14-19.   He also recalls observing the arrest of a drummer who was on the steps of the UNM Bookstore, and also recalls that Captain Gonzales had given a command to arrest that drummer "because he was agitating the crowd from the sidewalk."   Ex. 8 at 16at 19-24.

### 1. Fourth Amendment Excessive Force Claim against Defendant Fisher

Plaintiff's allegations against Defendant Fisher in the Second Amended Complaint concern only claims of Fourth Amendment excessive force (Count II) and state law tort claims of assault, battery and false arrest (Count V).   Defendant Fisher recalls observing what could have been Plaintiff's arrest and admits to firing a pepperball round, although he does not know which protestor was hit with the pepperball.   However, this is not sufficient to support Plaintiff's allegations of excessive force.

A plaintiff's claim of excessive force against law enforcement officers in the context of a seizure or arrest is analyzed under the "objective reasonableness" standard of the Fourth Amendment.   Graham v. Connor, 490 U.S. at 388.   A seizure occurs when "a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573

(1988); United States v. Hill, 199 F.3d 1143 (10th Cir. 1999).  In this case, even assuming

Defendant Fisher shot Plaintiff in the thigh with a pepperball, there are no facts which suggest that

Defendant Fisher had a role in Plaintiff's arrest or seizure.  Therefore, Plaintiff cannot sustain a

Fourth Amendment excessive force claim against Defendant Fisher.

2.      *State Law Tort Claims (Count V) against Defendant Fisher*

However, I find that there are sufficient facts presented to preserve Plaintiff's state law

tort claims of assault and battery against Defendant Fisher.  An actor is subject to liability to

another for assault or battery if (a) he acts intending to cause a harmful or offensive contact with

the person of the other or a third person, or an imminent apprehension of such a contact, and (b)

an offensive contact with the person of the other directly or indirectly results.  An assault, which

is the placing of another person in fear, may exist without a battery, which is the unwanted

touching or physical contact with another person.  State v. Ortega, 113 N.M. 437, 440 (N.M. Ct.

App. 1992).   The evidence concerning Plaintiff's alleged injuries sustained by a pepperball

precludes summary judgment for Defendant on Plaintiff's state law claims of assault and battery,

since there remains a question of disputed fact about whether it was Defendant Fisher who fired

the pepperball which hit Plaintiff.   On the other hand, Defendant Fisher is entitled to summary

judgment on the state law claim of false arrest for essentially the same reason as I have found

summary judgment to be appropriate on Plaintiff's excessive force claim – Plaintiff has not raised

a material issue of fact which infers that Defendant Fisher played any role in the arrest, except for

merely observing the arrest.

**Conclusion**

Defendants are not entitled to summary judgment on Plaintiff's claims of municipal liability

21

(Count III) and respondeat superior claims (for the state law tort claims in Counts V and VI).  A reasonable fact finder could conclude that the City's policy or custom was a moving force behind the alleged violation of Plaintiff's constitutional rights, based on: the existence of APD policy allowing officers' identities to be obscured at protests, inadequate training and decisions made by a final decisionmaker or policymaker during the protest.  Because a reasonable fact finder could also find that a certain APD officer or officers committed an enumerated tort under the New Mexico Tort Claims Act (as alleged in the Second Amended Complaint), summary judgment is precluded on Plaintiff's state law claims of supervisory negligence (Count VI), as well as state law tort claims of assault and battery, and false arrest.  For this reason as well, Plaintiff's claims against the City under respondeat superior will also proceed to trial.

Plaintiff has presented evidence which sufficiently raises disputed material facts regarding a connection between the conduct of Defendants Gallegos and Keith and Plaintiff's alleged injuries.  Defendants Gallegos and Keith are therefore not entitled to summary judgment on Plaintiff's claims of supervisory liability under § 1983 (Count IV).

The undisputed facts demonstrate no connection between Defendant Keith and Plaintiff's claims of unlawful arrest, excessive force, or the state law claims of assault, battery and unlawful arrest.  Thus, Defendant Keith is entitled to summary judgment on these claims, alleged under Counts I, II and V of the Second Amended Complaint.

Defendant Fisher is entitled to summary judgment on Plaintiff's claims of excessive force (Count II) and false arrest (part of Count V) because there are no facts from which to infer that he played any role in Plaintiff's arrest, and because Plaintiff's claim of excessive force is premised upon the Fourth Amendment.

22

**THEREFORE,**

**IT IS ORDERED** that  Defendants' Motion for Partial Summary Judgment: Dismissal of Plaintiff's Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, Supervisory Liability and Respondeat Superior claims (**Doc. 99**) is hereby DENIED for reasons described above;

**IT IS FURTHER ORDERED** that Sgt. Keith's Motion for Summary Judgment: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Unlawful Arrest and Excessive Force Claims and State law Assault, Battery and False Arrest Claims (**Doc. 101**) is hereby GRANTED IN PART and DENIED IN PART as described above; and

**IT IS FINALLY ORDERED** that Officer Fisher's Motion for Summary Judgment: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Excessive Force, Assault, Battery and False Arrest Claims (**Doc. 102**) is hereby GRANTED IN PART and DENIED IN PART as described above.

_____

UNITED STATES DISTRICT JUDGE